**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Bryan HALLORAN, Defendant-Appellant.**

**C.D. Cal. No. 5595–
Crim. C.A. 9th No. Misc. 5508.**

United States District Court,
C. D. California.

May 19, 1971.

Robert L. Meyer, U. S. Atty., David R. Nissen, Asst. U. S. Atty., Chief, Criminal Division, Tom G. Kontos, Asst. U. S. Atty., for plaintiff-appellee.

Richard G. Sherman, Beverly Hills, Cal., for defendant-appellant.

DISTRICT COURT ORDER SETTING FORTH THE REASONS FOR AND REAFFIRMING ORDER OF DECEMBER 4, 1970, DENYING BAIL PENDING APPEAL AND ORDER RETURNING RECORD TO COURT OF APPEALS

HAUK, District Judge.

Pursuant to "Order for Remand, Request for Response by Government" issued by the Court of Appeals on January 26, 1971, remanding the question of

bail pending appeal to this District Court, and requesting "that the reasons for denying bail be amplified, particularly (but not limited to) the reasons why the District Court believes there is no merit to the appeal" and asking for written findings by the trial judge under 18 U.S.C. Section 3146(d) and Section 3148, the District Court on February 10, 1971, gave its Notice and Order Re Bail on Appeal to Plaintiff-Appellee, United States of America, to Defendant-Appellant, Edward Bryan Halloran, and to their respective attorneys of record, setting the date of Monday, March 1, 1971, at 2 P.M. for hearing of any and all facts by way of affidavit and all arguments and contentions of law desired to be presented to the Court upon the question of bail pending appeal, which said hearing date was continued several times at the requests of Defendant-Appellant to this present day of May 3, 1971. At this date and time, May 3, 1971, present being Richard G. Sherman, Esquire, for and on behalf of Defendant-Appellant Halloran and Tom Kontos, Esquire, Assistant U. S. Attorney for and on behalf of Plaintiff-Appellee, the Court has conducted and concluded its hearing during the course of which there were presented to and considered by the Court the following:

1. The handwritten trial notes made by the trial judge during the 8-day trial of Defendant-Appellant in the District Court.

2. The report of the Probation Officer to the District Court dated August 24, 1970, and attached letters.

3. The Classification Study under 18 U.S.C. § 4208(c) ordered by the District Court in its judgment and commitment of August 24, 1970, which Classification Study is dated November 18, 1970, and received and considered by the District Court in rendering its Judgment committing Defendant-Appellant to ten years' custody on December 4, 1970.

4. The District Court Reporter's Transcript of Proceedings and minute order of December 4, 1970, in which the Court denied the Motion of Defendant-Appellant Halloran for bail pending appeal.

5. Motion to Appeal in Forma Pauperis with Affidavit in Support filed by Defendant-Appellant in the District Court on December 16, 1970.

6. Order Denying Appeal in Forma Pauperis made and entered by the District Court on December 16, 1970.

7. Motion for Bail Pending Appeal; Motion for Leave to Appeal in Forma Pauperis, Affidavit of Richard G. Sherman, filed on behalf of Defendant-Appellant in the Court of Appeals for the Ninth Circuit on January 4, 1971.

8. Plaintiff-Appellee's Opposition to Defendant's Motion for Bail Pending Appeal filed on February 24, 1971, including Declaration of Tom G. Kontos dated February 24, 1971, and Declaration of Edward J. Wallin, dated February 22, 1971.

9. Affidavits in support of defendant's request for bail pending appeal consisting of affidavits of defendant himself, his father, Edward J. Halloran, and William J. McCarthy of Charleston, Massachusetts, President of Local 25 International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers.

10. All arguments and points and authorities presented by respective counsel in writing and at the hearing here today.

Upon due consideration of all the foregoing and good cause appearing the Court now finds the following facts pursuant to 18 U.S.C. Section 3146(d) and Section 3148, Rule 46(a) (2) of the Federal Rules of Criminal Procedure and Rule 9(b) of the Federal Rules of Appellate Procedure, and the Court now states in writing the belief of the District Court and the reasons why there is no merit to the appeal, why it appears that the appeal is frivolous and taken for delay, why there is risk that the Defendant-Appellant Halloran will flee, why he

poses a danger to other persons and to the community, and why the District Court now reaffirms its order of December 4, 1970, denying bail on appeal.

## FINDINGS OF FACT AND REASONS

Defendant-Appellant Edward Bryan Halloran was convicted on August 1, 1970, after an 8-day jury trial in which a guilty verdict was returned upon the indictment charging Halloran and two others, Kagan and Henderson, with a violation of 18 U.S.C. Section 2113(a), (d), armed robbery of the Security National Bank, Rancho Conejo Branch in Newbury Park, California, on December 4, 1969. Kagan, after pleading guilty to a superseding information charging him with conspiracy to rob a national bank, 18 U.S.C. § 371, cooperated with the Government and gave extremely damaging eye-witness testimony against Halloran. Upon the verdict of guilty, the District Court sentenced Halloran to the maximum commitment of twenty-five years and a three-months' study under 18 U.S.C. Section 4208(c). After receiving the results of the study, the Court finally committed Halloran on December 4, 1970, for a term of ten years under the liberal parole provisions of 18 U.S.C. Section 4208(a), noting defendant's appeal upon his request after being advised of his rights under Rule 32(a) (2) of the Federal Rules of Criminal Procedure. Then after a hearing in which the Court considered argument made on both sides the Court entered its order denying bail on appeal briefly and orally stating its reasons for this denial on the date of judgment, December 4, 1970.

A month later, trial counsel for Halloran filed motions in the Court of Appeals for the Ninth Circuit, again seeking bail pending appeal and the privilege of proceeding in forma pauperis, supporting these motions by counsel's affidavit, which motions were opposed by the Government's Supplemental Opposition to Defendant's Motion For Bail Pending Appeal.

The Court of Appeals, having remanded the bail question to the District Court, we ordered the instant hearing here for the presentation of any additional factual matters and argument by the respective parties.

The Bail Reform Act, 18 U.S.C. Section 3141 et seq., and Rule 9 of the Federal Rules of Appellate Procedure set forth the considerations which should guide the Court in determining whether a person should be released pending appeal and require that the Court state in writing the reasons for action taken in the event the Court either refuses release pending appeal or imposes conditions of release. Release after conviction pending appeal is covered by Section 3148 of Title 18 which provides in part:

"A person * * * (2) who has been convicted of an offense * * * has filed an appeal * * * shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist or if it appears that appeal is frivolous or taken for delay the person may be ordered detained. * * * "

Thus the Act provides three instances when release pending appeal may be denied: (1) When the appeal is frivolous or taken for the purpose of delay, (2) When appellant poses a danger to another person or to the community, or (3) When appellant may flee the jurisdiction. Weaver v. United States, 131 U.S.App.D.C. 388, 405 F.2d 353 (1968).

In making these three determinations, the Court is guided by the ten factors set forth in 18 U.S.C. Section 3146(b) and referred to in the Court's Notice And Order setting this matter for hearing:

1. Nature and circumstances of the offense charged.

2. The weight of the evidence against the accused.
3. The accused family ties.
4. Employment status.
5. Financial resources.
6. Character and mental condition.
7. Length of residence in the community.
8. Prior record.
9. Failure to appear in Court proceedings.
10. Flight to avoid prosecution.

Any other reasons the Court finds material may also serve as guidelines.

The Court in its Order of December 4, 1970, denying bail pending appeal indicated in general terms that all three of the Section 3148 reasons for not allowing release on bail pending appeal were present in the case of this defendant, Halloran.

Now let us, per the directive of the Circuit, be more specific. Taking all of the documents and factual material presented and considered, it is clear beyond any doubt that the appeal is frivolous and taken for delay, there is real risk that Halloran will flee, and he poses a danger to other persons and to the community.

Here are the facts and reasons:

THE WALLIN AFFIDAVIT

"Prior to trial I interviewed all of the witnesses who testified for the Government and in addition I have conferred frequently with federal and local law enforcement officers who have been involved in the investigation of the case. The following statements are a summary based on my recollection of testimony during the trial.

"On December 4, 1969, at exactly noon, Halloran and three accomplices, David Phillip Henderson, John Flannery and Patrick Murphy, drove to the victim bank in a Cadillac which had been stolen earlier by Henderson. All four men, led by Halloran, ran into the bank. They were wearing gloves and stocking masks and carried hand guns. Immediately upon entering the bank, Halloran fired a shot into the ceiling and shouted a command for everyone to lie down. Halloran and one other man then vaulted the bank counter while the remaining two robbers stood near the two bank entrances. Cash was taken from several teller stations and the robbers leaped back over the counter and ran from the bank. They sped away in the stolen Cadillac with Halloran driving. Approximately one-half mile from the bank on a residential street, two eye witnesses, one of whom, James Tarpley, positively identified Halloran, saw the robbers switch from the Cadillac to a blue Ford Econovan. Halloran, Henderson, Flannery and Murphy then proceeded to the apartment of Floyd Richard Heady, approximately three miles from the bank where another accomplice, Frederick Kagan, was waiting. Heady had loaned his apartment keys to Halloran earlier that morning but did not realize that Halloran intended to use the apartment for a hide-out. The robbers changed clothes, had a drink, and counted the money. Halloran and the others left the apartment prior to the arrival of law enforcement officers. Shortly thereafter, police and FBI agents, following a series of clues, came to the conclusion that one of the men involved in the bank robbery was a person then believed to be Jim Taylor, a former professional football player for the Green Bay Packers. This was the name and identity assumed by Halloran while living in the Thousand Oaks area prior to the offense.

"Later that night Halloran was arrested and remained in custody until posting bond on or about December 31, 1969. On his first night out of jail he appeared in the early hours of the morning at the home of Frederick Kagan, and also at the apartment of Floyd Richard Heady. Kagan and

Heady were threatened. Heady was told that Halloran did not want him to testify and that he would be sent on a trip so that he would be out of town when the trial began.

"The trial was scheduled to begin on the morning of Tuesday, July 20, 1970. Halloran failed to appear. He arrived in Los Angeles on the following day and the trial began one and one-half days late. During the trial he took the stand and testified in an effort to establish an alibi. The jury disbelieved his testimony and he was convicted.

"There are numerous additional facts concerning this case which were not before the jury but which are relevant to the question of bail pending appeal. Shortly before trial, Frederick Kagan agreed to testify as a witness for the Government. During pretrial interviews he constantly expressed fear for his life and was obviously frightened during his trial testimony. His wife Adrienne Kagan, absolutely refused to testify because of her fear for her own safety and the safety of her family."

■ That the protection of this witness Kagan is a proper consideration when determining whether a defendant should be permitted bail pending appeal is clear from the wording of Section 3148 which provides that a defendant should not be released if conditions of release will not reasonably assure that defendant will not "pose a danger to any other person." This appears to be but a codification of the prime reason given by Justice Douglas in denying bail pending certiorari in Carbo v. United States, 82 S.Ct. 662, 669, 7 L.Ed.2d 769 (1962), where he concluded:

"(T)here is substantial probability of danger to witnesses should the applicant be granted bail; that this danger is relevant to the propriety of granting bail on appeal, since a new trial may be ordered; and in this case bail should be denied in the public interest."

## THE WALLIN AFFIDAVIT

"According to Kagan, Halloran had come to Southern California in the summer of 1969 following a call in which Kagan was told that Halloran needed a place to stay because of some trouble in Boston. According to the FBI and FBI informants, the "trouble" involved Halloran's participation in a gun battle with Boston area police following a bank robbery.

"Henderson came from Boston to California to visit Kagan in the fall of 1969. Halloran and Henderson began planning a bank robbery approximately one month before the offense. Kagan testified that he was present during most of the planning. He also furnished the clothing worn by the robbers and the Ford Econovan used during the getaway. According to Kagan the robbers decided to commit the offense at exactly noon on a Thursday for two reasons. They assumed that several extra teller windows would be open to handle business during the noon hour from bank customers who worked in numerous light industrial plants located in the vicinity of the bank. Halloran had also learned that Thursday is pay day at many of these firms and it was assumed that the bank would have extra cash on hand. The robbers believed that at exactly noon the extra teller stations would be opened but the customers would not yet have arrived to crowd the bank.

"Halloran and Henderson concluded a few days prior to the robbery that four men would be needed in order to carry out their plan. As a result Flannery and Murphy were telephoned in Boston and flew to Los Angeles shortly before the offense.

"Kagan also testified that Halloran and the others discussed two different methods for robbing the bank. One method involved entering the bank quietly and then, while standing in the lobby, pulling on masks and drawing guns. The other method, which was the method adopted, was called "cowboying it." Under this plan the robbers would rush

into the bank with masks on and guns drawn.

"A reliable FBI informant has also identified Halloran as one of the two men who robbed a bank in Braintree, Massachusetts on July 20, 1970, the day Halloran was supposed to appear in Los Angeles for trial in this case. According to the informant, the bank was robbed by Halloran and Robert Ford, a fugitive who is also being sought on murder charges. This informant's information is corroborated by the following facts:

1. The bank was robbed by two men;

2. The *modus operandi* was very similar to the offense which is the subject of this appeal. According to witnesses both men were masked and carried hand guns and the man believed to be Halloran vaulted the counter during the robbery;

3. Robert Ford's fingerprints were found in the stolen car which was used in the robbery;

4. Halloran did not appear for trial as scheduled in Los Angeles on the day of the robbery;

5. The informant stated that Halloran needed the money for attorney's fees; and,

6. Several witnesses described the man who vaulted the counter as being tall and very broad, stocky or athletic. Halloran, at the time of the events here described was approximately 6′ 2″ tall and weighed approximately 235 pounds. He is unusually broad through the chest, neck and shoulders and has a very distinctive build and appearance.

"At the time of the trial, Henderson, Flannery and Murphy were being sought by the FBI. Henderson has since been arrested and is presently serving a sentence for armed robbery. He is expected to be tried in Los Angeles for this bank robbery in the next few weeks. Flannery has an extensive criminal record and has served time in prison. Murphy has been charged and is being sought for murder. All of the defendants in the case are from the East Coast and have no ties to the community.

"Halloran was convicted on substantial evidence of a very serious crime involving violence and including shooting. It is my opinion that no conditions of release will reasonably assure that he will not flee or pose a danger to other persons, including witnesses, and the community, within the meaning of the Bail Reform Act and particularly 18 U.S.C. §§ 3146 and 3148."

Moreover, we have a further affidavit on behalf of the Government.

## THE KONTOS AFFIDAVIT

"The defendant Halloran is being investigated for his involvement in the following violent criminal activities:

"a. On May 10, 1968, the Saugus Bank and Trust Company located at New England Shopping Center, Route 1, Saugus, Massachusetts was robbed by six men. Robert Daddieco has admitted to federal authorities that he was one of the six men that robbed the Saugus Bank and Trust Company on May 10, 1968. He has further admitted to federal authorities that his accomplices were Edward Bryan Halloran, the defendant in the instant case, Peter White, Billy Johnston, Fred Smith and James McDonald. Further, James McDonald since has been murdered by Peter White and Billy Johnston according to police authorities.

"b. On June 6, 1969, the County Bank NA located at 125 Broadway, Somerville, Massachusetts was robbed.

"Robert Daddieco, Peter White, Fred Smith and Billy Johnston have admitted carrying out this bank robbery. Further, Robert Daddieco has told authorities that Edward Bryan Halloran, the defendant in the instant case, took part in this robbery. The five men including Halloran drove to this bank in a van. Halloran acted as

a lookout, when the Somerville Police arrived at the bank, Halloran engaged in a shootout with the police, during which Halloran wounded a police captain of the Somerville Police Department and shot out the grille work on one of the police vehicles present at the scene.

"c. On July 21, 1970, the South Shore National Bank, South Shore Plaza Branch, Braintree, Massachusetts, was robbed.

"This bank robbery occurred on the date that the defendant was not present for his trial in the instant case.

"A previously reliable informant told police authorities that this bank was robbed by Edward Bryan Halloran, the defendant in the instant case, and Richard T. Ford. Subsequently the latent fingerprints of Ford were found at the South Shore National Branch.

"d. The defendant Halloran is known to be associated with a Canadian group of criminals known as the Montreal West End Hoodlum Group which has sent members of the group to the United States to rob banks. Halloran is thought to co-ordinate bank robberies for this group of criminals.

"e. From 1959 through 1966 Halloran was arrested at least ten times for drunkenness.

"The defendant Halloran's family, as seen by the defendant's criminal activities, has not been able to turn the defendant away from a criminal life.

"The defendant is not a resident of California and if released it is felt by federal authorities that he will flee to Canada to engage in criminal activities with the Montreal West End Hoodlum Group.

"The defendant in his motion to proceed in forma pauperis admits he has no financial resources.

"The defendant failed to appear at the commencement of his trial due ap-parently to the fact he was robbing another bank.

"The defendant Halloran is a man that has lived by violent and criminal means."

Now referring to the ten factors listed in 18 U.S.C. § 3146(d), the Court adopts the conclusions of the Kontos Affidavit on behalf of the Government and reiterates them herewith:

1. The method in which the bank robbery was carried out in this case shows a wanton disregard for the safety of lives by the defendant Halloran.

2. The weight of the evidence against the defendant is overwhelming, showing beyond any reasonable doubt the guilt of the defendant.

3. Halloran's family ties have had no influence in preventing his criminal activities.

4. It is unlikely that the defendant would obtain legitimate employment if released.

5. The defendant has no visible means of support other than from his criminal activities.

6. The defendant has a violent character as reflected by his participation in criminal activities.

7. The defendant travels from east to west to commit his bank robberies.

8. The defendant is being investigated for extensive and serious criminal conduct.

9. The defendant robbed another bank on July 21, 1970, rather than being present for his trial in the instant case.

10. The defendant upon his release probably would immediately flee the United States to avoid further prosecution.

Finally, there is nothing in either the Probation Report or the three months' Classification Study to contradict or even impugn these facts and reasons which the Court has just enumerated at such great length and in such stark and shocking detail.

## CONCLUSIONS

■ With the foregoing findings of fact and reasons, it would be the height of folly and the depth of blindness to state the Court's strong and honest belief otherwise than that Defendant-Appellant Halloran's appeal is frivolous and taken solely for delay, that he has posed and now poses a danger to the accomplice-witness Kagan, and other eye-witnesses, and that there is a substantial risk he will flee.