UNITED STATES of America,
Plaintiff-Appellee,

v.

Danny BACA, Defendant-Appellant.

Nos. 410–70, 586–70.

United States Court of Appeals,
Tenth Circuit.

June 29, 1971.

Clyde E. Sullivan, Jr., Albuquerque, N. M., for defendant-appellant.

Victor Ortega, U. S. Atty., Albuquerque, N. M. (Mark B. Thompson, III, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Before HILL, SETH and DOYLE, United States Circuit Judges.

HILL, Circuit Judge.

This is the second time Baca has appealed a conviction for unlawful possession of heroin in violation of 21 U.S.C. § 174. In the first appeal, United States v. Baca, 417 F.2d 103 (10th Cir. 1969), he argued that the heroin should not have been admitted into evidence because it was the product of an illegal search and seizure. In that case, we held that part of the narcotics were in fact the result of an unconstitutional search and seizure. But it was also explicitly stated that two vials containing heroin and some other narcotics paraphernalia were constitutionally seized and usable as evidence. The case was accordingly remanded and a new trial was conducted. In that trial, the United States offered the two vials of heroin and the other paraphernalia, and they were admitted into evidence on the strength of the Circuit opinion. Baca was again convicted for violating 21 U. S.C. § 174 and was sentenced to a term of ten years.

Baca then filed a notice of appeal to this court and filed a motion for release while the appeal was pending, under the provisions of 18 U.S.C. § 3146(a). The trial court entered an order specifying the methods and conditions of release which, inter alia, required a $15,000 appearance bond. Subsequent events, however, caused the trial court to revoke Baca's release, and he was remanded to the custody of the United States Marshal. No. 410–70 is the appeal from the conviction, and No. 586–70 is an appeal from the order revoking appellant's release.

The facts have been fully set out in the prior opinion and will be referred to here only to clarify the disposition of the issues.

██ In No. 410–70, appellant's first and second arguments allege that the two vials and the accompanying narcotics paraphernalia which were used as evidence at the second trial were the products of an illegal search and seizure. That very argument was disposed of in the first appeal.

> We accept the finding of the district court that the two vials and wrapped parphernalia [sic] were in plain sight and that a crime other than the one called for by the parole violation warrant was openly being committed. As the Court in Go-Bart Importing Co. v. United States, supra [282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374], pointed out, things which are visible and accessible and in the offender's immediate custody can be seized by the police officers as was done in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231. * * * [T]his justifies * * * the seizure of the two vials and the narcotics paraphernalia * * *. 417 F.2d at 105.

It was obviously this statement which guided the trial court in admitting the evidence. We will not again consider the issue previously decided against appellant.

Next, appellant contends that the trial court erred by admitting the two vials without requiring the United States to show chain of possession from the time the contraband was first seized until it was received into evidence. The applicable law is unequivocal on this point. "[I]f, upon consideration of the nature of the article, the circumstances surrounding the preservation and custody of it and the likelihood of intermeddlers tampering with it, the trial judge deems the article to be in substantially the same condition as when the crime was committed, he may admit it into evi-

dence, and his determination 'that the showing as to identification and nature * * * is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion.' " Reed v. United States, 377 F.2d 891, 893 (10th Cir. 1967); O'Quinn v. United States, 411 F.2d 78, 80 (10th Cir. 1969); United States v. Bourassa, 411 F.2d 69, 73 (10th Cir. 1969); Rosemund v. United States, 386 F.2d 412, 413 (10th Cir. 1967).

■ The record does not show that the trial court abused its discretion in admitting the questioned evidence. Both officers who were primarily responsible for seizing the two vials and other paraphernalia testified that the items were dated and marked with the officers' initials and then placed in a marked envelope for mailing to the United States chemist. The contents were then sent by registered mail to the chemist on July 11, 1968. A United States chemist testified that he received an envelope by registered mail from the Bureau of Narcotics in Albuquerque on July 12, 1968. He examined the envelope to ascertain whether it had been opened and determined that it was still sealed. He then opened the envelope and removed a locked, sealed envelope that was contained in the mailing envelope. The sealed envelope was then stored in a vault until its contents could be analyzed. After analysis, the evidence was again marked, placed in a new locked, sealed envelope and returned to the vault. The chemist thereafter removed the sealed envelope and personally delivered it to the federal district court clerk. The district court clerk then testified that he had received the evidence from the chemist and stored it in a locked exhibit drawer until the date of its introduction into evidence. At the second trial, the officers who made the original search and seizure positively identified the two vials and narcotics paraphernalia as that which was taken from the chair in appellant's bedroom. It was that evidence which we previously held constitutionally seized. This testimony clearly establishes chain of possession and was proper foundation for introduction of the evidence.

■ Next appellant asserts that the parole violation warrant was used as a pretext for conducting a general and exploratory search of the apartment and therefore the evidence seized was the product of an unreasonable search. In Abel v. United States, 362 U.S. 217, 226, 80 S.Ct. 683, 4 L.Ed.2d 668, 690 (1960), the Supreme Court condemned the "deliberate use by the Government of an administrative warrant for the purpose of gathering evidence in a criminal case." The test to determine whether such a search is tainted is two-fold: (1) Did the United States Parole Office act in bad faith? and (2) Did it exercise its powers "in the lawful discharge of its own responsibilities" or was it merely serving as a tool for the narcotics officers in building a criminal prosecution against Baca?

■ In the original trial, the district court held that there was no bad faith in the issuance of the warrant; that the warrant for the arrest of Baca was issued in good faith in the regular course of events; that the warrant was not issued at the request of the narcotics officers; and that the decision to proceed administratively was not influenced by the purpose of amassing evidence for the prosecution of a narcotics crime. As in Abel, there is evidence which would support an inference opposed to the conclusion reached by the trial court. But when there is ample evidence of good faith, Abel instructs that the conclusions of the lower court should be sustained. Abel v. United States, 362 U.S. at 228, 80 S.Ct. 683. From the record in this case, we are convinced that there is solid proof which supports the findings of the trial court.

■ Appellant next argues that the trial court erred in failing to require the government to disclose the identity of an alleged informant. The argument is entirely speculative since there is no clear indication that an informer was ever

used in Baca's case. Indeed, the officers involved in appellant's arrest deny that their information as to his whereabouts came from an informant, and the United States Attorney assured the court that he was not aware of the use of an informer. Under these circumstances, we find no merit in Baca's allegation.

■ The singular argument in No. ₁586–70 is that the trial court's order which revoked the appeal bond and remanded Baca to the custody of the United States Marshal was an abuse of discretion. The United States questions whether this is a proper issue to now bring before this court under 18 U.S.C. § 3148 (1971 Supp.). Because of the disposition of the merits in the instant case, the question as to whether appellant should be released on bail pending this appeal is now moot. However, since under 18 U.S.C. § 3148 a convicted person may also be released pending a petition for certiorari, the issue may be prospectively viable. And under Rule 9(b), Fed.Rules of App.Pro., 28 U.S.C., we will consider the propriety of the order which revoked Baca's release. Following the United States Attorney's motion to change appellant's conditions of release, the trial court temporarily revoked Baca's release and set a hearing at which appellant was to show cause why the revocation should not be made permanent. At the hearing, Baca appeared in person and by his attorney and presented testimony. Following that, the trial court made the following pertinent findings:

5. DANNY BACA and another person were found unconscious in a stopped car in the middle of a street intersection in Albuquerque, New Mexico, at 4:00 a. m., on June 11, 1970. This created a condition which caused danger to users of the streets.

6. DANNY BACA, at the time and place set forth in paragraph 4 hereof, was with a person who had a loaded pistol readily available to him in the car.

7. DANNY BACA was in an intoxicated condition at said time and place. Subsequent to his arrest he threatened the lives of two of the arresting police officers. DANNY BACA's freedom would pose a threat to said officers.

8. The person in the car with DANNY BACA is a convicted felon.

9. DANNY BACA had used narcotic drugs at some time in close proximity to the time of his arrest. Such use poses a danger to others or to the community.

10. DANNY BACA had 30 caps of heroin in his possession at the time set out in paragraph 4 above. The person in the car with DANNY BACA had 1 cap of heroin in his possession. Such possession by DANNY BACA poses a danger to the community.

11. This Court revoked DANNY BACA's appeal bond on June 12, 1970, and ordered that he should be detained. The deputy United States Marshal had informed the Court that the staff had been unable to locate DANNY BACA at his usual places of abode and that inquiry by the United States Marshal and his staff has resulted in locating no one who knew the whereabouts of DANNY BACA until DANNY BACA appeared in Court for this hearing on June 17, 1970. This evidences contempt of this Court by DANNY BACA and shows that DANNY BACA has no intent to obey the law. DANNY BACA should have surrendered himself to the United States Marshal.

■■ The trial court concluded that Baca posed a danger to the community and permanently revoked the appeal bond and remanded him to the custody of the United States Marshal. The language of 18 U.S.C. § 3148 makes it clear that whether a convicted person is released on bail rests in the trial court's discretion. After examining the facts which prompted the revocation of Baca's

release, we are convinced that appellant was procedurally safeguarded by the hearing and that there was no abuse of discretion.

Affirmed.