UNITED STATES of America,
Plaintiff,

.v.

Archer PARR, Defendant,

No. SA-73-CR-267.

United States District Court,
W. D. Texas,
San Antonio Division.

Aug. 21, 1975.

John E. Clark, U. S. Atty., W.D.Texas, Wayne F. Speck, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

James R. Gillespie, Alfonso E. Alonso, Jr., James R. Gillespie, Inc., San Antonio, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SUTTLE, District Judge.

Came on to be heard in the captioned cause, pursuant to the Order to Show Cause entered herein on July 24, 1975, the question why Defendant's bond should not be revoked, or, in the alternative, increased, pending his further appeals from the Judgment of Conviction heretofore entered against him; and came on to be heard, also, the Motion of the Surety, Clinton Manges, to be exonerated from the bail bond posted by him to secure the appearance of the Defendant. The matter was called for hearing in San Antonio, Texas, on the 28th day of July, 1975, and, upon Motion of the Defendant, hearing was postponed until August 7, 1975, that being the first available time for such hearing; and came the United States of America, by the United States Attorney for the West-

ern District of Texas, and came the Defendant Archer Parr, in person and by counsel, and came the Petitioner Clinton Manges, also in person and by counsel; and all parties having announced ready, the Court proceeded to hear evidence and arguments of counsel.

After considering the evidence adduced on August 7 and 8, 1975, as well as that heard on the original trial, and the arguments of counsel, the following Findings of Fact and Conclusions of Law are entered in support of the Court's Judgment.

## FINDINGS OF FACT

1. The United States Court of Appeals for the Fifth Circuit, on July 24, 1975, affirmed the conviction of the Defendant, Archer Parr, in the captioned cause as No. 74–2628. The Opinion was unanimous. (Government's Exhibit 1).

2. Since his conviction of perjury in this cause, the Defendant Archer Parr has been removed from the office of County Judge of Duval County, Texas, by Judgment of the 229th District Court, Duval County, Texas (Government Exhibit 2). The Defendant's appeal from that Judgment of Removal is now pending before the Fourth Court of Civil Appeals, in San Antonio, Texas. (Government Exhibit 26).

3. The Defendant, Archer Parr, was born in Mexico City, Mexico, in 1925. His father was N. R. Weller. His parents were subsequently divorced, and he was adopted in 1934 by his grandparents. At the time of his adoption, his surname was changed to Parr. The adoption took place in Duval County, Texas. (Trial Transcript, pages 1364–1365; Government Trial Tender 1, page 189; Pre-Sentence Investigation Report; Statement of Defendant, through counsel, August 8, 1975).

4. The Constitution of Mexico, Article 30(a), confers Mexican nationality upon any person born within the Republic of Mexico, regardless of parentage. (Government Exhibit 13).

5. The Mexican Code of Criminal Procedure, Article 10–II, provides that no Mexican may be extradited to a foreign state, except in exceptional cases in which the Executive concurs. (Government Exhibits 10 and 3).

6. The United States has not succeeded in obtaining extradition of any Mexican national to the United States from Mexico in this century. (Government Exhibits 3 and 9).

7. The distance from the Defendant's residence in Duval County, Texas, to the international boundary between the United States and the Republic of Mexico at Laredo, Texas, is less than 100 miles. (Government's Exhibit 4; Testimony of Texas Ranger George E. Powell).

8. Archer Parr speaks fluent Spanish (Government Trial Tender 1, page 190; Testimony of Attorney Marvin Foster).

9. Since the Defendant's conviction, Duval County, Texas, has fallen into a state of political and governmental chaos, necessitating the intervention of the Attorney General of Texas, the State Legislature, the Texas Rangers, a conservator for the Water District, the State Bar of Texas, the District Attorney, local grand juries, and others. The political control of the Parr family may or may not have been weakened. (Government Exhibits 15 and 16; Testimony of Attorney Marvin Foster).

10. The laws of the State of Texas provide for the suspension of any attorney convicted of a felony, and for the disbarment of any attorney upon final conviction of a felony. The State of Texas initiated proceedings on June 3, 1974, to suspend and disbar the Defendant, Archer Parr. (Article 320a–I, Revised Civil Statutes of Texas; Government Exhibit 8; Testimony of Attorney Marvin Foster).

11. Archer Parr has, on past occasions in recent years, travelled outside the Continental United States. (Testimony of Attorney Marvin Foster).

12. At the time he was arrested pursuant to this Court's bench warrant on July 24, 1975, Archer Parr had in his possession a cashier's check in the amount of $121,500, purchased by Praxedis Canales, drawn on the Alice National Bank, and payable to the District Clerk of the United States District Court, Western District of Texas. (Stipulation, August 8, 1975).

13. Archie Parr owns assets, including real property, livestock, and personal property, of substantial value. He has, in addition, an expectancy (but no certainty) of inheriting approximately 4,700 acres of real property in Duval County, Texas, with a present maket value of approximately one million dollars, from his Aunt, Lillian Parr Moffit. She may also well be the Defendant's "Swiss Bank". An inventory of real and personal property of the Defendant, filed by the Court-appointed Receiver in a suit on a promissory note by the First State Bank of San Diego, Texas, against the Defendant, reflects the Defendant's ownership of real property totaling $640,000 and personal property totaling $763,166. Personal property listed on the inventory includes jewelry totaling $112,750 and furs totaling $74,500. (Government Exhibit 6; Pre-Sentence Investigation Report; Testimony of Accountant Norman Ransleban).

14. It has been adjudicated by the 229th District Court, of Duval County, Texas, that the Defendant, Archer Parr, has misappropriated property belonging to Duval County, and employees of Duval County, for his own personal purposes, in violation of the laws of the State of Texas, and his duties as County Judge of Duval County. Prior to that adjudication, the Defendant had been accused publicly by his wife, Jody Martin Parr, of using County employees to work on his ranch, at the expense of Duval County. (Government Exhibits 2 and 19).

15. Employees of Duval County, Texas, were directed by the Defendant to work as farm and ranch hands on real property owned by the Defendant, and to assist in the construction of a horse racing track on propery owned by him. Such employees were paid by Duval County, and not by the Defendant, for such services. The use of County employees for the Defendant's personal benefit continued after his conviction and release on bond in this cause. One Duval County employee, Leopoldo Serna, was so employed from approximately 1967 through March 1975, and others apparently continued to be so employed as of the date of the hearing in this matter. While so employed at the Defendant's ranch, and in the construction of the horse racing track on his property, such employees were paid as much as $375.00 per month in salary by Duval County. (Testimony of Texas Ranger George E. Powell; Testimony of Leopoldo Serna; Government Exhibits 20–24).

16. While holding the office of County Judge, and serving as Chairman of the Board of Equalization, the Defendant represented as an attorney, and received legal fees from, Coastal States Gas Company and Central Power and Light Company. Both companies own taxable property in Duval County, and both in all probability received favorable consideration from the Board of Equalization in connection with their real property taxes in Duval County. (Government Exhibit 18).

17. Texas Ranger George E. Powell commenced, in April 1975, to compile an inventory of heavy equipment owned by Duval County, and to locate such equipment. He located a number of items of such equipment on real property owned or leased by the Defendant. Most of that equipment has now been removed by Duval County to its own County shop and storage facilities. At least one piece of such equipment remained at the Defendant's ranch a few days prior to the hearing in this matter. Interviews with County employees who used the equipment found on Defendant's premises indicated that the equipment was used by them, at the Defendant's direction, to carry on farming and ranching opera-

tions for the Defendant, and to construct and maintain a horse racing track. (Testimony of Texas Ranger George E. Powell; Government Exhibits 11, 12, 27–36).

18. The press has attributed to Archer Parr statements to the effect that he intends to regain and retain political power in Duval County, and that he "can run the County from federal prison if necessary." (Government Exhibits 5 and 16).

19. In a sworn pleading filed by her in a divorce action which became moot when she took her own life, the Defendant's wife, Jody Martin Parr, alleged that Archer Parr has a. violent and uncontrollable temper, and is dangerous. (Government Exhibit 7).

20. Archer Parr has been quoted by the press as using abusive language toward those he apparently considers his enemies. (Government Exhibits 14 and 16). Such conduct invites violence.

21. The Defendant told Probation Officers Whitehill and Cromwell, at the time he was interviewed in connection with their Pre-Sentence Investigation Report, that he had no cash on hand, and he did not tell the Probation Officers that he had a bank account with money in it. Records of the First State Bank of San Diego, Texas, show that he had a checking account at that time; that he had made deposits to and withdrawals from that account just prior to the date of the interview; that there was in the account, at or about the date of the interview, a balance of several hundred dollars; that a statement reflecting that balance was mailed 'to the Defendant on or about the day prior to the interview; and that substantial deposits were made to the account a short time after the interview. (Testimony of Probation Officer Whitehill; Testimony of B. O. Goldthorn; Government Exhibits 38, 39, 40 and 41).

22. The First State Bank of San Diego, Texas, is the larger of the two banks doing business in Duval County, Texas. The majority shareholder of the First State Bank of San Diego is Harris Fender, who owns seventy-one percent of the shares in said bank. Archer Parr and Harris Fender are close friends. (Testimony of B. O. Goldthorn).

23. The Defendant is a lawyer. He is, or should be, aware that he is unlikely to succeed on the issues available to him in persuading any appellate court to overturn his conviction.

24. The Defendant may have committed acts of expatriation which, if proved to the satisfaction of Mexican authorities, would result in the loss. of his Mexican nationality. There is no evidence, however, that Mexican authorities are aware of any acts of expatriation on the part of the Defendant. The fact that the Defendant was born in Mexico under a different name than that by which he has been known since he was nine years of age would greatly complicate the efforts of the United States to extradite him from Mexico on a perjury conviction should he flee.

25. The Defendant's ownership of substantial assets, including assets which are readily moveable, his close friendship with the majority shareholder of the First State Bank of San Diego, whose relationship with the Defendant was the subject of comment by the Fifth Circuit Court of Appeals in its Opinion affirming the Defendant's conviction, and the apparent wealth of other members of his family, all indicate that the Defendant could remove sufficient assets from the United States to provide comfortably for himself in a place or places such as Mexico, Costa Rica, or Brazil—all beyond the effective extradition processes of the United States.

26. On May 9, 1974, the jury in this case found that the $121,500 received by the Defendant from the Duval County Conservation and Reclamation District was not for legal services rendered. Yet, on June 13, 1974, approximately 10 days after the State of Texas filed suit to disbar him, the Defendant deposited to his personal checking account a $25,000 legal fee paid to him by the Duval County Conservation and Reclamation District. The

checks themselves indicate that the $25,-000 constitute partial payment for legal services rendered in connection with a law suit. There was testimony at the Defendant's trial that he had been retained by the Board of Directors of the Water District in connection with that representation. One of the Directors testified at the Defendant's trial that he signed a letter agreement retaining the Defendant only because he was "told" to do so, and it is apparent that the Defendant's influence over and control of the Water District extended beyond his conviction for perjury. (Government Exhibits 38, 39, 40 and 41; Government Exhibit 47; Trial Transcript pages 373, 401–404).

27. On June 13, 1974, being the same date of the $25,000 deposit to the Archer Parr bank account, the Court finds that a $25,000 deposit was made to the account of Norman Ransleban, by a check from the Duval County Conservation and Reclamation District. (Government Exhibit 47). Mr. Ransleban testified that he was the long time personal accountant and friend of Defendant Archer Parr; that the Defendant Archer Parr resided with him in Corpus Christi, Texas, during the time Defendant Archer Parr was the subject of removal proceedings in State Court and absented himself therefrom.

Subsequent to June 13, 1974, a conservator was named for the Duval County Conservation and Reclamation District.

28. The record in this case tells the story of the power of the Defendant Archer Parr in Duval County; that such power is virtually absolute; that such absolute power has corrupted him absolutely. That the exercise of such power by the Defendant Archer Parr has prostituted the democratic and judicial process in Duval County, and constitutes a threat and danger to law and order, the citizens, the taxpayers, and public and private properties located in Duval County, Texas.

## CONCLUSIONS OF LAW

1. The District Court is the appropriate forum to hear and determine the motion filed by the United States in this cause. *United States v. Baca*, 444 F.2d 1292 (10th Cir., 1971).

2. The burden of establishing that the Defendant will not flee or pose a danger to any other person or to the community rests with the Defendant. Rule 9, Federal Rules of Appellate Procedure.

3. Admission to bail after conviction and pending appeal is within the sound discretion of the Court. *United States v. Baca*, supra; *Bloss v. People*, 421 F.2d 903 (6th Cir., 1970); *Sims v. Wainwright*, 307 F.Supp. 116 (D.C.Fla., 1969).

4. Factors to be considered by the Trial Court in determining conditions of bail pending appeal are (a) risk of flight; (b) the probability that the convicted person will pose a danger to another or to the community; and (c) lack of merit in the appeal. Any one or more of those factors may justify denial of relief pending appeal, or imposition of more onerous conditions of release. *United States ex rel. Walker v. Twomey*, 484 F.2d 874 (7th Cir. 1973).

5. The Defendant has violated Articles 31.04 and 39.01, Texas Penal Code, by using County employees and County equipment, at the expense of Duval County, for his own personal benefits. Those violations have continued, since the Defendant's conviction for perjury, up to approximately the date of the hearing in this matter, August 7, 1975, and constitute a violation of Part II(5(b)) of Defendant's bail bond.

6. The Defendant's involuntary removal from public office and the affirmance of his perjury conviction by the Court of Appeals for the Fifth Circuit both constitute material changes in the conditions that existed at the time the Defendant was admitted to bail pending appeal. Taken in conjunction with the apparent weakening of the Defendant's political control of Duval County, the prospect of disbarment as an attorney, the personal tragedies he has suffered in the deaths by suicide by his uncle and his

wife, and the relative ease with which he would be able to enter the Republic of Mexico and support himself therein, those changed conditions have created an unacceptably high risk that the Defendant would flee to the Republic of Mexico if allowed to remain at large on bond in any amount pending further appeal.

7. The Defendant's status as a Mexican national by birth, together with the fact that he was born under a different name than that by which he is now known, creates an unacceptable risk that the United States would be unable to succeed in extraditing him from the Republic of Mexico should be flee to that country. While the Defendant may have committed acts of expatriation sufficient to cause the loss of his Mexican nationality, there is no evidence that the Republic of Mexico is aware of those acts, or aware that Archer Parr, who may have committed such acts of expatriation, is one and the same person as Archer Weller, who was a Mexican national by birth. This Court concludes, therefore, that it is not feasible to continue the Defendant at liberty on any conditions, because of the risk of flight and the risk of extreme difficulty in securing extradition.

8. The "danger to . . . the community" provision of 18 U.S.C. § 3148 permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical, harm might result to the community at large. *United States v. Louie,* 289 F.Supp. 850 (N.D.Cal.1968). The record shows that even after his conviction for perjury and his removal from judicial office, the Defendant has continued to misappropriate assets of Duval County and other taxing entities for his own use and benefit. The Court concludes that he will continue to constitute a danger to his community so long as he is allowed to remain at liberty, in that his defacto political power is still sufficiently great to enable him to continue to misappropriate the revenues

and the assets of Duval County to his own use and benefit, to the distinct pecuniary detriment of the County and all of its taxpayers.

9. The unanimous Opinion by which the Court of Appeals for the Fifth Circuit affirmed the Defendant's conviction is both thorough and authoritative. Every issue raised by the Defendant has been firmly resolved against him. The opinion contains no novel or unprecedented propositions of law that would merit review by the Supreme Court. The Defendant's Petition for Rehearing, filed with the Clerk of the Court of Appeals for the Fifth Circuit on August 15, 1975, raises only one issue; i. e., it urges the Fifth Circuit to reconsider and overrule the abandonment principle stated in *United States v. Cashio,* 420 F.2d 1132 (5th Cir., 1970), *cert. denied,* 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420 (1970), that the presentation of evidence by the defendant, after a motion for judgment of acquittal is denied, constitutes a waiver of that motion. The *Cashio* rule is the law not only in the Fifth Circuit, but also in the Second, Third, Sixth, Eighth, Ninth and Tenth Circuits. Furthermore, the same rule has been stated by the Supreme Court as recently as 1971. *McGautha v. California,* 402 U.S. 183, 215–16, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). This Court concludes, therefore, that the Defendant's prospect of overturning his conviction by any further attempted appeal is so remote as to render any such further appeal frivolous.

In consideration of the findings of fact and conclusions of law hereinabove set out, this Court finds that the Defendant, Archer Parr, has violated a material condition of his bail bond, to wit, that he refrain from violating the law; that he is likely to flee the jurisdiction of this Court if permitted to remain at liberty pending further attempts to appeal his conviction; that so long as he is at liberty, he constitutes a continuing danger to the community in which he has re-

sided; and that his further attempts to appeal his conviction are frivolous. It is, therefore

Ordered that the Defendant, Archer Parr, be, and he is hereby, committed to the custody of the Attorney General of the United States, or his authorized representative, for service of the sentence of imprisonment heretofore imposed. No bail pending further appeal shall be permitted.