UNITED STATES of America, Plaintiff,

v.

Thomas C. ERICKSON and Aneta J. Erickson, Defendants.

No. CR–79–184–D.

United States District Court,
W. D. Oklahoma.

June 10, 1980.

Larry D. Patton, U. S. Atty. by William S. Price and Susie Pritchett, Asst. U. S. Attys., Oklahoma City, Okl., for plaintiff.

Clyde R. Maxwell and Morgan C. Taylor, Newport Beach, Cal., for defendants.

## ORDER

DAUGHERTY, Chief Judge.

Following the convictions of Defendant Thomas C. Erickson of three counts of failure to file an income tax return, thirty counts of preparing false and fraudulent income tax returns for others and two counts of furnishing a known false and fraudulent document to the Internal Revenue Service, the Government filed an Application to Amend Conditions of Release as to Defendant Thomas C. Erickson which Application is supported by certain documents. Defendant Thomas C. Erickson has filed a Reply in opposition to said Application. Said Defendant is presently awaiting sentence on said convictions and from the date of his arraignment has been released on a $5,000 surety bond.

The Court has conducted an evidentiary hearing and heard arguments on said Application at which the Government was represented by Assistant United States Attorney William S. Price and Defendants were both personally present with their attorney Mr. Clyde R. Maxwell. At the hearing the Government assumed the burden of proving grounds justifying that the Defendant Thomas C. Erickson after conviction be held without bail. *Leary v. United States,* 431 F.2d 85 (Fifth Cir. 1970).

The Government urges and requests that after being convicted as aforesaid the Defendant Thomas C. Erickson pursuant to 18 U.S.C. § 3148 be ordered detained without bail. In this connection the Government does not assert that said Defendant's anticipated appeal herein would be frivolous or taken for delay but claims that said Defendant poses a risk of flight to avoid incarceration and poses a danger to persons and to the community if not ordered detained. The persons allegedly endangered are three witnesses who were former employees of said Defendant and who testified against said Defendant in the trial herein and three Internal Revenue Service agents, one of whom testified against the Defendant in the trial herein. The alleged danger to the community is said to be this Defendant's continuing intent to violate the Internal Revenue Code by not filing his personal income tax returns and by preparing false and fraudulent income tax returns for others.

The evidence of the Government establishes by Joyce Green, who was a witness in the trial herein, that Defendant Thomas C. Erickson has stated as many as ten times in the presence of his employees at his tax

office that he was going to kill Internal Revenue Service agents Louie Geiser and Paul Elledge who were investigating his tax activities as to both his failure to file personal tax returns and his alleged preparation of false and fraudulent tax returns for others; that he carried a loaded gun; that he stated he could have said agents killed for fifty to one hundred dollars; that Joyce Green left the employee of said Defendant and opened her own business with another former employee, Betty Guy, in competition with said Defendant whereupon he called Joyce Green and told her that she knew what was going to happen to her; that he stated he was not a violent man but he had a silent partner who was; and that he came to the opening of her tax office in November 1978 and gave her and Betty Guy each a florist box containing dead roses which he said was from his silent partner. Also, this witness testified that said Defendant came to the parking lot she uses near her tax office at about 9:30 or 10:00 o'clock one evening and blocked her exit therefrom with his car for approximately five minutes. This witness further testified that as rumors surfaced that Defendant Thomas C. Erickson was under investigation by the Internal Revenue Service he stated that he would win in Denver; that if not, he would never go to prison and that he would kill a bunch of people before he did. This witness testified that said Defendant, after the trial herein, followed her in his car in Anadarko, Oklahoma for about three blocks on Tuesday, June 3, 1980 and was again behind her car in his car the following Wednesday; that he pulled up beside her building and glared at her; that he parked in the parking lot she uses and parked beside her car but said nothing to her. This witness testified that when she left the employment of said Defendant and opened her tax return office with Betty Guy, they mailed about one hundred letters to friends and acquaintances, some of whom were clients of said Defendants; and that said Defendant has never assaulted her at any time.

Betty Guy, a former employee of said Defendant, who entered the tax return business with Joyce Green and was a witness in the trial herein, testified that Defendant carried a loaded gun; that he said that he would not go back to prison; that he would kill IRS agents if they came after him; that he did not like IRS Agent Louie Geiser and would have him killed or eliminated; that he had someone in Chickasha who would do it for fifty or one hundred dollars; and that IRS Agent Paul Elledge was afraid of him and thought that he might shoot him and that he probably would. This witness gave the same testimony as witness Joyce Green about said Defendant saying that he had a silent partner who was violent and that she also got dead roses at her tax office opening which said Defendant stated were from his silent partner. This witness further testified on cross-examination that said Defendant had not committed acts of violence toward her but that she considered said Defendant's actions as to her to be a threat to her; that she talked to IRS Agent Paul Elledge while she worked for said Defendant; and that she did not get a list of said Defendant's customers when she left his employ but that they mailed about seventy-five to one hundred letters when they opened their tax return office, some of which went to said Defendant's clients. Further, this witness testified that after the trial herein two anonymous telephone calls were received at her house in the early morning hours around 2:00 to 3:00 A.M. and that her husband answered both calls.

The husband of Betty Guy testified that on June 2, 1980 he received two telephone calls around 2:00 to 3:00 A.M. That when he answered the first call there was only silence. When he answered the second call he heard an explosion like a gun shot and female laughter. When he asked who was there the caller hung up.

Anita Palesano, a former employee of said Defendant who worked for him from January 1978 into this year, testified that said Defendant told her he was going to have Joyce Green and Betty Guy eliminated and said this in a serious way; that he was a serious man; and also that before going

to jail he would lock his office door and shoot the agents down with a machine gun before he would be taken. This witness also testified that said Defendant carried a gun and never told her that he carried the gun because of local robberies or burglaries.

Miracle Moore, another former employee of Defendant who was a witness against said Defendant at the trial herein, testified that Defendant Thomas C. Erickson carried a gun; stated that he would like to see an IRS auditor in Lawton, Oklahoma, dead; stated that he had a contract out on Betty Guy; that she and Joyce Green were the enemy and that he was mad at them; that the IRS had put them in business; that they had sent out letters and took some of his clients; and said he was not going to prison or if he did a lot of dead people would be left in his path. This witness also testified that when she left Defendant's employment about four or five weeks ago all tax returns prepared in his office were 100% wrong; that after she left his employment and after the trial herein the Defendant Tom C. Erickson stopped in front of her house in his car with a black male and was pointing to her house until she appeared whereupon he drove off.

Donna Miller, an IRS tax auditor located in Lawton, Oklahoma, testified to being followed very slowly for several blocks by Defendant Thomas C. Erickson in his car after she had conducted a tax audit that he attended; that it was daylight but said Defendant had his headlights on; and that she sought refuge in a music store and noticed that said Defendant circled the block in which the store was located a couple of times before he left.

Paul Elledge, an IRS Agent, testified that Defendant Tom C. Erickson handed out copies of the Communist Manifesto to people in the foyer of the Oklahoma City office of the IRS; and that he also handed out his business cards and advised those there not to file income tax returns. This witness also testified that the IRS was not in any way involved with said Defendant's recent arrest by Anadarko police for certain traffic violations and resisting arrest. That

since the trial herein several telephone calls have been made to his house but upon answering there was only silence except for one call which his wife answered. In this call his wife was cursed out and the caller wanted to know where he was and said she was Linda Green. He further testified that he contacted Linda Green and she denied making such a call to his house.

Defendant Thomas C. Erickson presented evidence from the psychiatrist who testified at his trial as to his mental condition. This witness gave the opinion that said Defendant, from his examinations, would not flee, was mild mannered and not violent and was not a threat to the public. He did not appear to agree with the report of his psychologist who tested said Defendant that under stress he could become violent.

The wife and Co-Defendant of Thomas C. Erickson testified that he did not resist the officer when recently arrested in Anadarko. She also testified about their assets including two acres of land against which the father of Defendant Thomas C. Erickson holds a mortgage in the amount of $80,000. The other assets consist of a 1959 housetrailer, six Lincoln Continental automobiles which were a part of their used car business, some out buildings, tax office furniture and equipment and bank accounts. She testified that the Defendant was born near Hinton, Oklahoma; has lived in that area all of his life; and that his father lives near Hinton, Oklahoma, now.

The Defendant Thomas C. Erickson testified and generally denied making all the foregoing threats except that he did mention a machine gun as a joke. He also denied all comments attributed to him about going to prison; that the roses given to Joyce Green and Betty Guy may have been slightly wilted as he put them on his dashboard on the way to their tax office (in November); and that he had no silent partner. He gave substantially the same testimony as his wife regarding their assets. He stated that he had carried a gun for self-protection as he carried large sums of money and there had been armed robberies and burglaries in Anadarko near his office.

He testified that he used the same parking lot that Joyce Green used when he went to his bank though the bank had its own parking lot. He also denied following anyone or making any telephone calls to any of the witnesses or to the residence of Paul Elledge. He acknowledged five previous felony convictions, two for larceny of domestic animals and three for improperly carrying a gun; that he has been on probation for seven years; and that he is now on state probation. He stated that he had no passport and no intention of fleeing or harming any witness; that he did not intend to carry a gun in the future though he had a right to do so under the Second Amendment to the Constitution of the United States. He also denied pointing out the house of Miracle Moore to anyone. This Defendant testified that he prepared tax returns for clients this year for calendar year 1979 basically as he did in the years involved in this case; that he would proceed in the same manner when preparing tax returns for clients for calendar year 1980; and that he does not plan on filing a personal income tax return in the future.

Two witnesses who appeared to be tax protestors testified that they had known Defendant Tom C. Erickson for about three years principally at tax meetings and in their opinions he was not a violent man, would not flee and was not a threat to the community.

18 U.S.C. § 3148 provides as follows:

§ 3148. Release in capital cases or after conviction

A person (1) who is charged with an offense punishable by death, or (2) who has been convicted of an offense and is either awaiting sentence or sentence review under section 3576 of this title or has filed an appeal or a petition for a writ of certiorari, shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained. The provisions of section 3147 shall not apply to persons described in this section: *Provided,* That other rights to judicial review of conditions of release or orders of detention shall not be affected.

■ There is no right to bail after conviction. *United States v. Bynum,* 344 F.Supp. 647 (S.D.N.Y.1972). The question of whether a convicted person should be released on bail pending appeal rests in the sound discretion of the trial court. *United States v. Baca,* 444 F.2d 1292 (Tenth Cir. 1971), *cert. denied* 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1971); *United States v. Quicksey,* 371 F.Supp. 561 (S.D.W.Va.1974). It is clear that standards for post-trial relief are much stricter than the standards relating to pre-trial release. *United States v. Miranda,* 442 F.Supp. 786 (S.D.Fla.1977); *United States v. Quicksey, supra.*

As to the Government's claim that Defendant Thomas C. Erickson will flee, the Court finds from the evidence presented that the same is not sufficient to justify the Court in concluding that Defendant Thomas C. Erickson will flee to avoid incarceration should his convictions herein be affirmed on appeal.

■ However, the Court concludes from the evidence presented that the Defendant Thomas C. Erickson poses a danger to certain of the witnesses who testified herein and certain IRS agents and also poses a danger to the community. Because of both or either of these dangers, the Defendant Thomas C. Erickson should be forthwith detained without bail as no one or more of the conditions of release as set out in 18 U.S.C. § 3146 will reasonably assure that said Defendant will not pose a danger to other persons and to the community.[1]

1. At arguments heard in connection with the evidentiary hearing conducted on the Application under consideration, discussion was had regarding said Defendant's being ordered as a condition of release not to participate in the preparation of income tax returns pending final

The annotation at 26 A.L.R.Fed. 970 (1976) analyzing what constitutes "danger to any other person or to the community" within the meaning of 18 U.S.C. § 3148 states as follows at pages 973–980:

> Generally speaking, the term "danger," as used in 18 USCS § 3148, has been deemed to refer to some imminent threat of unlawful conduct (see, for example, *Leary v. United States* (1970, CA5 Tex.) 431 F.2d 85, infra § 3), and is not to be restrictively applied only to those situations involving physical violence (see *United States v. Erwing* (1967, D.C.Cal.) 268 F.Supp. 877, and *United States v. Louie* (1968, D.C.Cal.) 289 F.Supp. 850, both infra § 3).

.   .   .   .   .

Both actual and implicit threats to the safety of witnesses or potential witnesses have also served as predicates for denial of release under the "danger to any other person or to the community" provision of 18 USCS § 3148 (§ 7, infra).

The term "danger," as used in 18 USCS § 3148, has been construed in the following cases so as not to be restrictively confined only to threats of physical violence.

Thus, in *United States v. Erwing* (1967, D.C.Cal.) 268 F.Supp. 877, the court held that there was no indication in the language or legislative history of 18 USCS § 3148 that pre-statutory practices would be altered, or that the word "danger" would be restrictively confined to instances where the threatened harm involved physical violence.

In *United States v. Louie* (1968, D.C. Cal.) 289 F.Supp. 850, the court construed the "danger to the community" provision of 18 USCS § 3148 so as to permit judicial consideration of a defendant's propensity to commit crime generally, even where only pecuniary damage and not physical harm might have an effect on the community at large. The court supported rejection of a construction of § 3148 which would have limited its application to situations in which violent crime was threatened, noting specifically that nothing in the legislative history of § 3148 suggested such an approach.[2]

.   .   .   .   .

In the following cases involving other offenses (that is, offenses which involved neither narcotics nor physical violence), bail pending appeal was denied under the "danger to the community" provision of 18 USCS § 3148.

In *United States v. Louie* (1968, D.C. Cal.) 289 F.Supp. 850, supra § 3, the court, applying the "danger to the community" provision of 18 USCS § 3148, denied bail pending appeal from a conviction for the unlawful interstate transportation of forged securities. It was noted that the defendant conceded that he had "consistently over a period of years operated as a confidence man." In light of the dilatory tactics and "simply not credible" protestations urged in some of the six or seven criminal proceedings pending against the defendant in both federal and

---

disposition of this case. Based on the testimony of this case and this hearing the Court is not persuaded in the exercise of sound discretion that such a condition is appropriate or feasible. Moreover, such a condition would not eliminate the danger to witnesses as found herein.

**2.** Also see *United States v. Parr*, 399 F.Supp. 883 (W.D.Tex.1975) which holds at p. 888:

> "The 'danger to ... the community' provision of 18 U.S.C. § 3148 permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical, harm might result to the community at large."

and *United States v. Rabena*, 339 F.Supp. 1140 (E.D.Pa.1972) which holds at p. 1142:

This section [18 U.S.C. § 3148] provides that persons convicted of crimes are to be treated in the same manner as persons awaiting trial unless there is reason to believe that the above dangers exist and that there are no conditions of release as enumerated in 18 U.S.C.A. § 3146(a) designed to prevent their occurrence. The Court is authorized to consider such factors as the demeanor of the defendants at trial, the facts of the case, any patterns of behavior which may reflect on the defendants' future conduct, and the likelihood of the defendants' committing future unlawful acts while released on bail.

state courts, the court concluded that release on bail pending appeal in the instant case should not be granted.

In *Russell v. United States* (1968) 131 App.D.C. 44, 402 F.2d 185, the court, applying the "danger to the community" provision of 18 USCS § 3148, denied bail pending appeal of a 19-year-old convicted of housebreaking and petit larceny and of a 23-year-old convicted of the unauthorized use of a motor vehicle. The court noted that the former defendant, within little more than a year of adulthood, had been convicted of two misdemeanors, as well as the instant felony committed while on probation, and had also been arrested for robbery and carrying a dangerous weapon. The court noted that the latter defendant had spent most of the past 7 years in confinement, had an appeal pending from a conviction for carrying a dangerous weapon, and had a record of criminal conduct while on both parole and pretrial release, including two misdemeanors and two instances of unauthorized use of motor vehicles.

The foregoing annotation provides at page 981 as follows with reference to the safety of witnesses:

"In the following cases, concern for the safety of witnesses has been found to be a sufficient predicate for denial of bail pending sentence or appeal, under the "danger to any other person or to the community" provision of 18 USCS § 3148. [Cases cited include *United States v. Campbell*, 314 F.Supp. 157 (D.Mass.1970); *United States v. Ursini*, 276 F.Supp. 993 (D.Conn.1967); *United States v. Tropiano*, 296 F.Supp. 280 (D.Conn.1968); *United States v. Rabena*, 339 F.Supp. 1140 (E.D.Pa.1972); *United States v. Louie, supra; United States v. Sutton*, 322 F.Supp. 1320 (S.D.Cal.1971); *United States v. Halloran*, 327 F.Supp. 337 (C.D.Cal.1971); *United States v. Baca, supra; United States v. Thompson*, 294 F.Supp. 879 (D.D.C.1969)]."

In the case of *United States v. Ursini, supra*, bail was denied pending appeal under the danger provisions of 18 U.S.C. § 3148 based on threats having been made against the life of one of the witnesses for the prosecution prior to trial. Also in *United States v. Thompson, supra*, bail was denied pending appeal based on threats made prior to trial by the defendant who had a record of two prior serious felony convictions.

It is therefore the finding and conclusion of the Court under the evidence herein that the Defendant Thomas C. Erickson made threats before trial against certain witnesses who testified against him herein and since the trial has conducted himself in a threatening manner towards at least one of said witnesses. Though the anonymous telephone calls cannot be attributed definitely to said Defendant, their existence are circumstances for proper consideration by the Court in connection with the safety of witnesses testifying in this case. Hence, it is deemed under the evidence and applicable law that Defendant Thomas C. Erickson poses a danger to certain of the witnesses that have testified against him herein. The Court further concludes that under the evidence the Defendant Thomas C. Erickson poses a danger to the community by his acknowledged intention of continuing the preparation of income tax returns of others in a manner which the jury herein has found to constitute the preparation of false and fraudulent tax returns. This practice which this Defendant admits will continue in the future poses a danger to the community in that it will cause considerable grief, trouble and pecuniary damage to a considerable number of citizens for whom said Defendant prepares tax returns and will also cause significant pecuniary expense on the part of the Government to audit said returns.

On the basis of the foregoing findings and conclusions of the Court the Defendant Thomas C. Erickson should be detained without bail, he should be ordered forthwith committed to the custody of the United States Marshal and upon such commitment his present bond should be exonerated.

IT IS SO ORDERED this 10th day of June, 1980.