**UNITED STATES of America**

v.

**Jeff FORT, Appellant.**

**No. 22564.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 24, 1969.

Decided Feb. 10, 1969.

---

Messrs. William W. Brackett and Marshall Patner, Chicago, Ill., were on the motion for appellant.

Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., entered appearances for appellee.

Before BAZELON, Chief Judge, and FAHY, Senior Circuit Judge.

### ORDER

PER CURIAM.

Upon further consideration of appellant's motion to summarily reverse the order of the District Court of January 24, 1969, which motion was heretofore argued by counsel, and upon considera-

tion of the memoranda filed by the parties, it is

Ordered by the Court that appellant's aforesaid motion be denied for the reasons stated in the attached opinion, and it is

Further ordered by the Court that the temporary stay of the order of the District Court committing appellant for study pursuant to 18 U.S.C. § 5010(e) granted by this Court on January 24, 1969, is hereby dissolved.

PER CURIAM:

After a jury found Jeff Fort guilty on two counts of contempt of Congress, a misdemeanor offense [1] which we believe is invariably followed by bail pending final disposition, the trial judge denied bail pending sentencing. This court reversed that decision and entered an order "that appellant shall be admitted to bail pending imposition of his sentence * * *." Fort is a resident of Chicago, and was not then and as we understand is not now under any detention at the hands of the authorities there, notwithstanding his only conflicts with the law brought to our attention, except the present convictions, occurred in Chicago.

When Fort appeared for sentencing on January 24, the trial judge stated,

The Court is not ready to impose a final sentence on the defendant. * * Instead, I will remand him to the custody of the attorney general pursuant to Title 18, Section 5010(e) * * * for examination to determine his suitability for commitment pursuant to the Federal Youth Corrections Act.

Appellant moved in this court for summary reversal. This court temporarily stayed the order of the trial court until we could consider the novel and difficult questions presented by the apparent collision of Section 5010(e) of the Youth Corrections Act [2] and Section 3148 of

1. 2 U.S.C. § 192 (1964).

2. 18 U.S.C. § 5010(c) (1964) provides:
   "If the court desires additional in-

formation as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it

the Bail Reform Act.[3] We directed the parties promptly to file memoranda addressed to this problem, as well as to the Government's oral motion for revocation of bail.

The cursory analysis in the Government's memorandum [4] stresses the rehabilitative purposes of commitment under Section 5010(e), and argues that consequently the use of such a "pre-sentencing aid" did not conflict with the appellant's right to be free upon bail under the order of this court. This analysis overlooks the reality that such a commitment, however rehabilitative in purpose, deprives one of liberty prior to review of the validity of the conviction. The Government informs us, "[W]e are advised by District of Columbia correction authorities and by officials of the Bureau of Prisons that facilities for a § 5010(e) outpatient study are not available."

The Government argument that commitment under Section 5010(e) is a "pre-sentencing aid" overlooks the Supreme Court decision in Corey v. United States,[5] which we believe compels the conclusion that such a commitment is not simply a pre-sentencing aid but is "freighted with sufficiently substantial indicia of finality to support an appeal" [6] from the conviction and, consequently, permit an application to the district court for bail pending appeal.

The petitioner in *Corey* was committed under 18 U.S.C. § 4208(b) (1964)[7] rath-

---

may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings."

3. 18 U.S.C. § 3148 (1967 Supp.) provides:
"A person (1) who is charged with an offense punishable by death, or (2) who has been convicted of an offense and is either awaiting sentence or has filed an appeal or a petition for a writ of certiorari, shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained. The provisions of section 3147 shall not apply to persons described in this section: PROVIDED, that other rights to judicial review of conditions of release or orders of detention shall not be affected."

4. To support its motion for revocation of bail, the Government memorandum of January 27 relied by reference upon the representations contained in its Petition for Rehearing, Suggestion for Rehearing En Banc and Request for Forthwith Relief, which was filed on January 25 and denied on January 27. To support its claim in the Petition that the appellant is a "patently dangerous person involved in organized gang activity and traffic in firearms," the Government relied heavily upon a number of arrests in Chicago not followed by convictions. Moreover, there had been before the District Court a report of a probation officer in Chicago concerning an arrest December 8, 1968, "on an old warrant issued because of nonpayment of a $50 fine for Disorderly Conduct," followed by a search of Fort's premises which was said to have resulted in the location in the apartment of "3 (12-gauge) shotguns" among other things. The appellant's counsel had represented to this court at the hearing on January 24 that three shotgun shells, and not three shotguns, were found. Subsequent information received from Chicago reveals that this representation was correct.

5. 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963).

6. *Id.* at 175, 84 S.Ct. at 303.

7. 18 U.S.C. § 4208(b) (1964) provides:
"If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (c) hereof. The results of such study together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an ad-

er than under Section 5010(e). Despite minor variations in phaseology, however, the two statutory schemes are similar insofar as the problem of when "sentencing" occurs is concerned. Under Section 5010(e), "If the court desires additional information as to whether a youth offender will derive benefit from treatment under [the Act] * * *," the trial judge may order a 60-day commitment for "observation and study." At the end of that time, the trial judge may place the youth on probation under Section 5010(a), or commit him to the custody of the Attorney General under Section 5010(b) or (c) for a period not to exceed six years or the maximum sentence permissible for his offense.

Under Section 4208(b), "If the court desires more detailed information as a basis for determining the sentence to be imposed," the judge may order a three-month commitment to permit preparation of a report relating to the offender's suitability for parole. At the end of that time, the court may place the prisoner on probation immediately, or impose any sentence authorized by law.

The Supreme Court concluded in *Corey* that an appeal could be taken at the time of the initial commitment under Section 4208(b):

> It would obviously contravene the basic policies of the criminal appellate rules to require a defendant sentenced under § 4208(b) to defer his appeal until after he had submitted to the three or six months of incarceration and diagnostic study prescribed by the statute. Such a requirement would not only forestall any opportunity of a prompt appeal from an underlying criminal conviction, but would deprive a convicted defendant of the substan-

tive right to be enlarged on bail while his appeal was pending. Indeed the imposition of such a mandatory three- or six-month term of imprisonment before the defendant could file an appeal might raise constitutional problems of significant proportions.[8]

This reasoning is fully applicable to a case such as this involving Section 5010 (e) rather than Section 4208(b), and compels the same conclusion here. Here, as in *Corey* "the litigation is complete as to the fundamental matter at issue— 'the right to convict the accused of the crime charged.'"[9] And, as in *Corey*, the appellant faces the prospect of a substantial period of confinement.

There are, it is true, certain differences in phrasing between the two statutes, as the Government points out. Section 4208(b) provides that the initial commitment "shall be deemed to be for the maximum sentence of imprisonment prescribed by law." The trial court then may "affirm * * * or reduce the sentence originally imposed" when making its final determination. Section 5010 (e) contains no such language; the word "sentence" instead appears only in Sections 5010(a), (b) and (c), which deal with final commitments under the Act.

These differences in form do not obscure the functional similarity between the two statutes. Under both, the offender is temporarily committed for a study of his rehabilitative potential; at the end of that time, a final sentencing determination is made. We can see no reason to deny the offender committed under Section 5010(e) the same right to appeal his conviction promptly and to apply for bail pending appeal as the offender committed under Section 4208(b) enjoys.[10] To do so, as in *Corey*, "might

ditional three months, for further study. After receiving such reports and recommendations, the court may in its discretion: (1) Place the prisoner on probation as authorized by section 3651 of this title, or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applica-

ble provision of law. The term of the sentence shall run from date of original commitment under this section."

8. 375 U.S. at 174, 84 S.Ct. at 301.

9. *Id.* at 173, 84 S.Ct. at 302.

10. In concluding that the approach taken in *Corey* concerning the appealability of an initial commitment is appropriate in

raise constitutional problems of significant proportions."

The effect of our decision may be to delay commitments under Section 5010 (e) in some cases until an appeal has been resolved. But final commitments under Section 5010(b) or (c) are delayed whenever an appellant is admitted to bail pending appeal. Since the "study and observation" provided for by Section 5010(e) is integrally related to any rehabilitative efforts under Section 5010 (b) or (c), there is much to recommend a regime which allows a commitment under Section 5010(e) immediately to precede a commitment under Section 5010(b) or (c). Delay in the application of the provisions of the Youth Corrections Act is an inevitable part of any system providing for bail pending appeal. But such delay may be a lesser evil than a prolonged hiatus between evaluation under Section 5010(e) and rehabilitation under Section 5010(b) or (c). Moreover, where bail pending appeal is denied the court in its discretion could utilize pending the appeal the "study and observation" opportunity provided by Section 5010(e).

■ Since we conclude that the commitment under Section 5010(e) ordered on January 24 constituted an imposition of sentence insofar as the appealability of Fort's conviction is concerned, our order of December 6 admitting the appellant to bail "pending imposition of his sentence" has expired by its own terms. By this analysis the commitment order terminated rather than contravened our order, and the appellant's motion for summary reversal is accordingly denied.

■ We are advised that Fort has noted an appeal from his convictions. Should he apply for bail pending appeal,

Rule 9(b) provides that such an application "shall be made in the first instance in the district court." For this reason it is both unnecessary and inappropriate for this court to pass upon the Government's allegations concerning the appellant's supposed dangerousness to the community. Such matters are now for the district judge to consider in the exercise of his responsibilities under Rule 9(b).[11]

So ordered.

---

the circumstances of this case, we note that a second appeal may sometimes be appropriate at the time a final sentence is imposed. *Cf.* Id. at 174 n. 15, 84 S.Ct. 298. Similarly, we see nothing in the statutory scheme of which Section 5010 (e) is a part which would prevent a convicted offender from delaying his appeal

until a final sentencing determination is made under Section 5010(a)–(d). *Cf. id.* at 173–176, 84 S.Ct. 298.

11. *See* Weaver v. United States, 133 U.S. App.D.C. ——, 408 F.2d 1269 (October 4, 1968).