UNITED STATES of America, Plaintiff,

v.

Fernando MIRANDA et al., Defendants.

No. 76–292–Cr–JLK.

United States District Court, S. D. Florida.

Dec. 14, 1977.

---

R. Jerome Sanford, U. S. Atty., Miami, Fla., for plaintiff.

Michael J. Osman, Miami, Fla., for defendants.

## ORDER DENYING BOND PENDING APPEAL

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the petition of defendant, Fernando Miranda, to be released on bond pending the appeal of his conviction by a jury on December 6, 1977. The court, having considered the record and having heard oral argument on this matter, finds and concludes that the petition should be denied.[1]

### I. *Factual Background*:

On January 31, 1976, state and federal authorities uncovered a shipment of twenty-three (23) tons of marijuana at Bella Vista Point, Florida. As a result of the arrests made at that time, an indictment was returned in June of 1976 charging several defendants with various violations of federal law. Defendant, Fernando Miranda, was not indicted at that time. However, he was indicted subsequently in September of 1976. That indictment charged Miranda and others with violating five statutory provisions, one of which was dis-

---

1. The court enters this order to reflect the disposition rendered with regard to this matter during the hearing of December 7, 1977. During this hearing, which was several hours in duration and devoted exclusively to a consideration of bond pending appeal, extensive oral argument was provided by both counsel. In addition, this argument was supplemented by the testimony of defendant. Finally, this court notes that it has scrutinized, quite carefully, notes made during the trial that it presided over in arriving at a determination of this matter.

missed by this court at trial. The four remaining counts charged Miranda with:

  (i) participation in a conspiracy to import quantities of marijuana into the United States; [2]
  (ii) importation of this substance; [3]
  (iii) possession of this substance; [4]
  (iv) unlawful possession of a firearm: to wit, three shotguns possessed during the commission of the offense of possession of marijuana with intent to distribute. [5]

A jury found defendant guilty on each of these four counts. As a result of this conviction, defendant could be ordered to serve a maximum sentence of twenty-five years. [6]

On or about March 1, 1976—one month after the 23 ton shipment was uncovered and six months before defendant was indicted—a second fifteen (15) ton shipment of marijuana apparently occurred at No-Name Key. Defendant Miranda is presently under investigation for this offense. Further, the government's chief witness in the case which resulted in defendant's conviction has stated, to an agent who testified before this court, that defendant was involved in this importation. [7]

In April of 1976, the defendant Miranda fled to Spain. F.B.I. Agent John Peterson testified at the bond hearing that during a conversation with Nora Gonzales, the former wife of Carlos Hernandez-Rumbaut, Ms. Gonzales informed him that she had been in Spain in the fall of 1976. Carlos Hernandez is an indicted co-defendant in this matter and he is currently a fugitive. While in Spain, she visited the residence of her former husband in Costa del Sol. At that time, she spoke with Fernando Miranda and, on the basis of her conversation, she concluded that he had been living with Carlos Hernandez for an extended period of time. In addition, the court believes, on the basis of the trial and the subsequent hearing, that Fernando Miranda and Carlos Hernandez-Rumbaut were the principals in these importations of drugs.

Defendant Miranda remained outside the United States from April of 1976 to June of 1977. By defendant's own admission, he knew of the indictment pending against him as early as November of 1976, but waited until February 1977 before contacting his attorney to arrange a voluntary surrender in this matter.

In June of 1977, defendant Miranda surrendered to authorities in this country. During the entire period that he lived in Spain and continuing through to the present, defendant has not had a visible source of income. Testimony at trial revealed that Carlos Hernandez, discussed above, had assured all of the members of the conspiracy of unfailing financial support. In addition, he apparently stated that he would furnish those members with any documents needed to protect them in their activities or to catalyze their escape. Jose Perez, the principal witness in the case against Miranda, testified that his $40,000 bond had been furnished by Hernandez and Miranda. Further, Perez testified that on one occasion, Carlos Hernandez literally "dumped" $100,000 on a table, stating that such funds were to be used for the protection of "his men".

On November 29, 1977, the case against Fernando Miranda came to trial. The trial ended on December 6, 1977 with a guilty verdict on all four counts. Defendant now seeks release on bond pending his appeal.

II. *Discussion* :

This court recognizes its obligation, under Rule 9(b) of the Federal Rules of Appellate

---

2. 21 U.S.C. § 963.

3. 21 U.S.C. § 963.

4. 21 U.S.C. § 952(a).

5. 21 U.S.C. § 841(a)(1).

6. The first three of the above-mentioned four counts carry maximum sentences of five years each. The fourth carries a maximum sentence of ten years.

7. This information was presented in the course of the testimony of Detective Hopkins who had questioned Jose Perez, the government's chief witness, prior to trial.

Procedure, to designate the specific statutory provision upon which it bases its decision. In addition, this rule requires the court to delineate the rationale underlying its choice of that specific provision. *See, Weaver v. United States*, 131 U.S.App.D.C. 388, 405 F.2d 353 (1968). However, because the court believes that its decision herein represents a major step in the development of criminal law in this circuit, if not the nation, it will attempt to set forth the concerns underlying its decision to commit the defendant into custody without bond in greater detail than might otherwise be mandated.

### A. The Criteria for Denying Bail:

■ The court notes, as a preliminary matter, that the criteria for granting bail pending appeal are far more stringent than the criteria applicable to a decision on bail before a trial has commenced. *See*, 18 U.S.C. § 3148. This court is guided in its bail determination by the Bail Reform Act, 18 U.S.C. § 3148. That Act designates two major factors which this court must consider in its decision-making calculus in these matters: (i) the danger to the community posed by the defendant and (ii) the risk that defendant will flee the jurisdiction if permitted to remain free on bond. *See, also, United States v. Stanley*, 152 U.S.App.D.C. 170, 469 F.2d 576 (1972).

■ These two factors embody several more specific concerns. These concerns have been enumerated by the Court of Appeals for the District of Columbia in *United States v. Stanley, supra*, as follows:

(i) the nature and circumstances of the offense;

(ii) weight of the evidence against the accused;

(iii) the defendant's family ties;

(iv) the defendant's employment status;

(v) the defendant's financial resources;

(vi) the defendant's character and mental condition;

(vii) the length of defendant's residence in the community;

(viii) any prior criminal record; and

(ix) any flight or failures to appear in court proceedings prior to or during the time of the trial.

Because the bail determination is committed to the trial court's discretion, this court believes that it is essential that it explain, in detail, the factors which have been instrumental in its ultimate disposition of this matter.

### 1. Nature and Circumstances of the Offense:

■ The defendant was convicted for importation of a massive amount of a controlled substance; a conspiracy to import same; and possession of this substance. In addition, defendant was convicted for the unlawful possession of firearms.

The court notes that the "street value" of the substance seized in this case is enormous. It is critical that one recognize that defendant is not an individual who merely unloads vessels utilized for the transportation of drugs nor is the defendant a street "pusher". He has been convicted of importing twenty-three tons of marijuana. Unlike the unloader or the pusher, he is at the source of the drug traffic which currently plagues this nation.

The conviction for the unlawful possession of a firearm is also influential in this court's determination of the danger that this defendant represents to the community. In fact, testimony at trial and the argument of the United States Attorney at the bond hearing indicate that several other weapons may have been involved in this matter. These weapons, known as AR–15s, are comparable, according to the government, to the military's M–16s. Thus, the weapons seized in this matter may have been part of a larger arsenal available to the defendant upon release.

### 2. Weight of the Evidence Against Accused:

The evidence against the defendant in this case is substantial. The government presented, as their chief witness, a man who was himself indicted for the conspiracy and importation of the controlled substance in-

volved herein. Further, this same witness has stated, in the course of his questioning by an F.B.I. Agent, that he and the defendant were involved in a successful importation of 15 tons of marijuana only one month after the one involved herein.

Defense counsel argue that there is a strong likelihood of reversal of the court's denial of their motion for mistrial made in the course of this trial. The court notes that this motion was extensively argued during the trial and this court, after careful deliberation, found no merit in that argument at that time.

This court believes that the evidence presented against the defendant at trial, along with the evidence received at the bond hearing, is *extremely* unfavorable to defendant.

### 3. *Family Ties* :

This factor cuts both ways in this matter. Defendant does have a father, mother, brothers, children and wife residing in Miami. However, defendant is separated from his wife. Further, defendant asserts that he visits his children regularly and is providing for their support. However, defendant admitted to this court that while he was a fugitive in Spain, he did not have his first communication with his family until eight months after his departure from the United States. In terms of the support that he supposedly provides his children, the court reemphasizes that this defendant has been without visible means of income for well over a year.

Had members of the defendant's family come forward to testify in his behalf at the bond hearing, this court might have been more seriously impressed with defendant's claim of substantial family ties. But absent this occurrence, this court deems defendant's actions with regard to his family to be a factor which does not militate in his favor. His theory that he is substantially committed to remaining in the Miami area is therefore deprived of support.

### 4. *Employment Status* :

The court is troubled by the fact that defendant has admitted to being unemployed for over one year.

This lack of employment is particularly problematic here. Defendant has existed for well over one year without a source of income. This fact, in conjunction with the discussion that appears under factor "5", infra, compels the court to conclude that large sums of money would be available to the defendant should he be released at this time—money which is unconnected to any visible or lawful means of employment.

While defendant's lack of employment is not a factor of great weight in this court's balancing process, it clearly does not weigh in defendant's favor.

### 5. *Financial Resources* :

According to defendant's testimony, he owns few assets. Defendant presently owns a small lot, approximately $25,000 in value, and he possesses equity in a duplex of approximately $27,000. Of greater significance to this court in its determination of bond is the fact that defendant has demonstrated a willingness to depart from the Miami community—including his financial assets located there—in the past. Therefore, they do not represent an item which would constrain defendant in his movement or encourage him to act in a lawful manner.

Further, as noted in connection with the discussion of item "4", supra, defendant had lived in Spain for over a year without income. He travelled to this country and paid his attorneys in that period—again, without income. Further proof of the financial resources available to the defendant was provided by the testimony of F.B.I. Agent Peterson, summarized in the factual background section of this opinion. Carlos Hernandez, himself, an indicted co-conspirator, had provided lodging for the defendant and had supposedly displayed his willingness to arrange for the protection of his "men" on several occasions in the past.

Thus, if defendant has any ties based on financial resources, those ties would appear

to emanate from the leader of a developed criminal organization which has been responsible, in some part, for the defendant's welfare and support in the last year and a half. This court concludes that there are substantial resources available to the defendant. They are of such a nature as would enhance the possibility that he once again would engage in the activities for which he has just been convicted.

### 6. *Character and Mental Condition*:

This is not a factor which militates one way or the other in the court's determination of bond herein.

### 7. *Length of Residence in Community*:

Here again is a factor which militates both in favor of and against the defendant. Prior to his seeking refuge in Spain, defendant had resided in this community for several years. However, in April of 1976, Mr. Miranda departed for Spain and did not return to this country until June of 1977—over one year later.

It is apparent that defendant has lived outside of the United States for a far greater period of time in the last two years than he has lived within its borders. Further, defendant admits that he was aware of the warrant for his arrest in November 1976 while he was still in Spain. He did not contact an attorney to arrange for his surrender until February of 1977 and he did not consummate that surrender until June of that year.

Thus, the factor of residence primarily weighs against defendant herein.

### 8. *Criminal Record*:

Defendant has no prior criminal record. This factor can only weigh in his favor.

### 9. *Flight*:

As has already been discussed, defendant Miranda was a fugitive from justice for over one year prior to his return in June of 1977. The court notes, in defendant's favor, that he voluntarily returned to this country and that he has thus far appeared on every court date scheduled.

However, the fact that defendant once fled this jurisdiction and the fact that he lived without income while abroad and through to the present, serve as important indications that he has connections with the kind of financial resources and individuals required for the importation of large quantities of drugs. See, for further discussion, items "4" and "5", supra.

The court wishes to make clear that the fact of prior flight is influential in this court's belief that defendant will be a *danger to the community* upon release—*not* that defendant probably will flee again. This court believes that the greatest risks of flight are in the period prior to arrest and subsequent to the affirmance of the trial court on appeal. The period between conviction and the affirmance of the appeal can often be as great as three years. During this time, a defendant who is free on bond need not be concerned with confinement since he knows his freedom continues until his appeal is finally determined.

We ignore the realities of the criminal justice system, as it is practiced in this community, if we believe the possibility of flight is high prior to the determination of the appeal. It is a well known fact that affluent criminal defendants are carefully advised by their lawyers about the nature of the judicial process. Whenever a jury returns a verdict of guilty, an appeal is routinely lodged, thereby engendering a two to three year delay independent of any consideration of merit in the appeal. With the announcement of the guilty verdict, astute criminal defense lawyers *automatically* move for a supersedeas bond pending appeal. The government has not objected and the judiciary, up to the present has perfunctorily granted the bond counsel have agreed upon. Therefore, the appearance of a defendant at arraignment, trial and his sentencing does not constitute a gamble since his freedom virtually has been assured until the appellate process has run its course.

Therefore, this court notes that defendant's punctual appearance at the proceedings held thus far is inconsequential. In

addition, the court reiterates that the defendant's prior flight is a factor more closely concerned with his danger to the community than with his potential for further flight.

B. *Legal Foundation of "Danger to the Community"*:

A consideration of the above nine factors convinces this court that defendant represents a sufficient danger to the community that release on bond pending appeal would be unwarranted. But there are several general concepts which first must be enumerated before this court engages in a discussion of the particular danger posed by this defendant to the community.

■ First, it is beyond dispute that the criterion of "danger to the community," which is an explicit component of the Bail Reform Act, is not limited to the potential for doing *physical* harm. See, *United States v. Louie,* 289 F.Supp. 850 (D.C.Cal. 1968). In the present case, the danger entailed by defendant's release is far greater than physical or pecuniary harm. Drug trafficking represents a serious threat to the general welfare of this community. Drug importation and its eventual sale is directly involved in the furtherance of drug dependence and is conducive to the proliferation of crimes related thereto. National statistics on armed robbery, assault and murder have increased tremendously as narcotic addicts have sought ways to obtain funds to feed their habits.

■ Second, the burden of demonstrating that one is not a danger to the community is on the defendant under the Bail Reform Act. See, *United States v. Quicksey,* 371 F.Supp. 561 (D.C.W.Va.1974). Rule 9(c) of the Federal Rules of Appellate Procedure states that "the burden of establishing that the defendant will not flee or *pose a danger to any other person or to the community* rests with the defendant." Finally, the court notes that the standards guiding its determination of bail after conviction and pending appeal are more stringent than the standards applicable to the determination of bail before the trial when the defendant is presumed innocent. 18 U.S.C. § 3148.

■ Third, the danger to the community must be of such dimensions that the only reasonable manner by which it can be averted is incarceration. If the court can tailor the conditions of defendant's bond in such a manner that the danger can be checked, the court must do so and not order that the defendant be confined without bail. See *Sellers v. United States,* 89 S.Ct. 36, 21 L.Ed.2d 64 (1968).

In sum, bail pending appeal is hardly a certainty. As Justice Douglas noted in *Carbo v. United States,* 82 S.Ct. 662, 666, 7 L.Ed.2d 769 (1962), a case in which bail was denied pending appeal:

> It would seem that while bail normally should be granted pending review where the appeal is not 'frivolous' nor 'taken for delay' there still is discretion to deny it. . . . If, for example *the safety of the community would be jeopardized, it would be irresponsible judicial action to grant bail.* (emphasis added).

■ With these general concepts as background, this court next addresses the most critical issue in this bond determination, namely: *whether substantial drug trafficking is itself a sufficient danger to the community to justify denying bond pending appeal to a defendant found guilty of being a dealer in drugs.* The court believes that the question must be answered in the affirmative.

This is a question of first impression in this Circuit. While other courts have treated this question before, none has established that this one element—drug trafficking—can serve as an independent foundation for a denial of bail.

Any discussion of this issue must begin with the landmark cases of *United States v. Erwing,* 268 F.Supp. 877 (D.C.Cal.1967) (hereafter *"Erwing I"*) and *United States v. Erwing,* 280 F.Supp. 814 (D.C.Cal.1968) (hereafter *"Erwing II"*). In *Erwing I,* defendant had been indicted for smuggling and concealing heroin and cocaine. While on bail pending his appeal from a conviction

for the sale of heroin, defendant was charged with concealing more heroin. In addition, he had been involved in a drug-related incident, for which charges were eventually dropped, while on pre-conviction bail. The government moved to set aside the bail under which defendant had remained at liberty pending his appeal.

The court ordered that the bail previously established be revoked, stating that "the fact that there is reasonable cause to believe that the defendant is still engaged in his nefarious business" cannot be ignored. *Erwing I,* at 879. The court was convinced that there was every reason to believe that if bail were not revoked, defendant would resume his drug violations, including the sale and distribution of such substances. The *Erwing I* court characterized the danger posed by such a resumption as follows:

> The *community must be protected* from violations of the law which prey on the weakness of mankind. A *wholesale drug peddler,* such as the defendant, exploits this weakness and, in doing so, *certainly poses a danger to the welfare of the community.*

*Erwing I,* at 879 (emphasis added).

Almost one year later, in *Erwing II,* the court was confronted with a motion for reconsideration of the order it had previously entered revoking bail. In the period subsequent to the court's initial consideration of this matter in *Erwing I,* defendant had been *indicted* for other narcotics violations sustained while free on his original bail (eventually revoked in *Erwing II*). The court emphatically concluded that defendant was a "non-addicted unlawful trafficker in narcotics . . . [who] would be a danger to the community." *Erwing II,* at 817. Of greatest significance is the justification provided by the court for its decision to maintain the bail revocation rather than to release defendant upon conditional bond:

> [t]he very make-up of the narcotics traffic, *its secrecy and its clandestine nature* tend to militate against the plan of conditional or supervised release.

*Erwing II,* at 818 (emphasis added).

The *Erwing* court clearly was impressed by the danger posed to the community by trafficking in drugs. This case thus established an important foundation for the concept of "drug trafficking" as a danger independently sufficient to support the denial of bond pending appeal. However, the strength of this concept for present purposes is somewhat diminished by the fact that the defendant in *Erwing* had repeated his activity of drug trafficking while on bail—a factor not present in the case *sub judice.*

A few years later, Chief Judge Atkins of the Southern District of Florida wrote an opinion which more nearly established the concept of "drug trafficking" as a sufficient danger to support bond denial. *United States v. Nelson,* 346 F.Supp. 926 (S.D.Fla. 1972), aff'd 467 F.2d 944. *Nelson* presented a factual situation somewhat similar to that before the *Erwing* court. Defendant was convicted in 1966 for the purchase of heroin. Six years later, he was indicted for possession of cocaine and subsequently was convicted on that charge. One month after the cocaine indictment, he was indicted for illegal distribution of heroin and subsequently convicted thereon. Later that same year, defendant was found in his house with cocaine, narcotics-cutting equipment, and unexplained sums of money. Along with these activities, defendant had repeatedly violated the conditions of his prior bond by leaving the Miami area. Thus, unlike the case *sub judice,* defendant had provided vivid proof of his inability to be released without reverting to his prior unlawful behavior. Finally, the *Nelson* court found that defendant's appeal was frivolous.

Thus, there were several factors present in *Nelson,* each of which could have provided independent support for the court's decision to deny bond pending appeal. Risk of flight, frivolity of appeal, and repeated drug violations separate from the violation for which he was convicted, were factors present in *Nelson* that are not truly present in the case before this court. Because of the presence of these factors, the *Nelson*

court's decision to deny bond is not truly helpful in deciding this case. However, the dictum contained within that opinion is especially noteworthy.

The *Nelson* court preliminarily noted that the question of whether continued narcotics trafficking constitutes a danger to the community is one "of first impression in the Fifth Circuit."[8] *Nelson*, supra, at 927. The court responded by stating that such a question must be answered in the affirmative. The crucial dictum is contained in its explanation of this conclusion:

> [a]lmost daily the misery occasioned by such traffic in heroin and cocaine is vividly illustrated in our courts by the plight of both narcotics users and victims of criminal acts committed to obtain the exorbitant funds necessary to satisfy the addiction.

*Nelson* supra, at 927.

The foundation was thereby further cemented for the establishment of the concept of drug trafficking as a danger to the community.[9]

This court recognizes that the case before it is not of the same cast as the one before the court in *Nelson*. However, it should not be forgotten that defendant Miranda has been linked substantially to a fifteen ton shipment of marijuana currently being investigated by the government, in addition to the twenty-three ton shipment and weapons offense for which defendant was just convicted.

Miranda's involvement with these drug shipments, in combination with his ability to flee and survive for well over one year without a source of income, suggests that defendant is involved in an unlawful network operating at a level of low visibility. This inference is further supported by the fact that defendant resided, during his year abroad, on the grounds of the alleged "kingpin" of these operations—Carlos Hernandez-Rumbaut.

These operations are sufficiently well hidden from this court's view that it would be impossible to restrain defendant from reengaging in them. To borrow from the *Erwing* court, supra, the "secrecy" and the "clandestine nature" of drug trafficking militates against conditional release here.

More recent support for this position can be found in *United States v. Twomey*, 484 F.2d 874 (7th Cir. 1973). In that case, bail was denied pending appeal on the basis of two factors: defendant's appeal did not present arguable questions and defendant possessed a strong potential for further drug trafficking. Either factor, alone, could have supported the denial of bond. Therefore, *Twomey*, like the other cases discussed above, did not establish that drug trafficking was a danger to the community of such magnitude that it independently could support a denial of bond.

However, because most of the court's opinion focussed on the second factor—that is, the defendant's potential for further drug trafficking—several valuable insights are provided therein. In *Twomey*, defendant had been convicted for possession of heroin and marijuana. He had been sentenced to seven to fifteen years on the heroin count alone. In addition, narcotics had been found in defendant's car when he met with the accident that eventually gave rise to his arrest. The heroin involved had an estimated street value of $20,000 and defendant was carrying a loaded pistol in a shoulder holster at the time of his arrest.

Notwithstanding these factors, each of which is quite comparable to those before this court in the case *sub judice*, the *Twomey* court relied upon defendant's *potential* for further drug trafficking as the *primary* justification for its decision to deny bond. As the court explained,

---

8. The court notes that *Leary v. United States*, 431 F.2d 85 (5th Cir. 1970) does not threaten the foundation of this court's opinion herein. In *Leary*, the Fifth Circuit stated that a court could not deny bail pending appeal simply because the defendant was likely to engage in the activity of *advocating* the use of drugs upon his release. The Fifth Circuit clearly did not preclude the development of the concept of drug trafficking as a danger to the community with its opinion in *Leary*.

9. The Fifth Circuit affirmed *Nelson* without an opinion.

[t]he circumstances clearly indicated that he, with his passenger, was on his way to make sales of heroin in several small towns.

*Twomey,* supra, at 877.

In the case *sub judice,* this court goes one step further. This court asserts that the *potential* for further drug trafficking can be more than the primary justification for denying bond. It can be the sole justification for such a denial.

Simply stated, it is time for the merchants of misery, destruction and death to be put out of business. The hideous evil wrought by these criminals through their unlawful importation and distribution of narcotics and controlled substances is unforgivable. Engulfed by their greed, these individuals have shown no concern for the thousands of lives that they have ruined and the unimaginable sorrow that they have heaped upon the people of this community, this state and this nation.

Yet as destructive as these criminal ventures have been to the victims, they have been equally profitable to the criminals who have promoted them. The immense wealth that these drug dealers amass from the misery of many provides these criminals with funds sufficient to satisfy the highest bonds and to acquire the services of the most experienced and expensive defense attorneys available.

This court is not alone in its opinion nor does it mean to suggest that it is a pioneer in this area. The saddest aspect of this national problem is that almost twelve years ago, Chief Justice Burger, then sitting on the District of Columbia Court of Appeals, and Senior Judge Miller confronted a similar issue in the context of a bail decision pending appeal. *Hansford v. United States,* 122 U.S.App.D.C. 320, 353 F.2d 858 (1965). Their opinion is significant for its subtle understanding of a problem that has grown to epidemic proportions since that day.

The defendant, in *Hansford,* had been convicted of the purchase and resale of heroin. His record of prior sales of drugs was clear. Two previous narcotics convictions and two apparent parole violations, along with the fact that he had stolen goods to finance his habit, impelled the *Hansford* court to hold that,

> it is not reasonable for society's—and Appellant's—protection, that we assume Appellant, if released on bail, will overnight cease to be an addict or that he will confine himself to legitimate activities to finance his addiction. *If narcotics traffic is a social and health hazard, then every narcotics dealer is a danger to society;* the fact that the cause of his peddling of narcotics is related in part to his addiction is irrelevant.

*Hansford,* supra, 122 U.S.App.D.C. at 322, 353 F.2d at 860. (emphasis added).

Today, this court takes the final step in the process set in motion by *Hansford.* Trafficking in drugs is a social hazard. Every dealer of substantial quantities is a danger to society. It is not incumbent upon this court to provide Fernando Miranda with an opportunity to demonstrate his propensity to engage in further drug trafficking. The size of the importation for which he was convicted and the apparent nature of the organization surrounding him provide ample justification for the denial of bond pending appeal in this action. As Justice Douglas cautioned, "it would be irresponsible judicial action to grant bail . . . [if] the safety of the community would be jeopardized." *Carbo v. United States,* 82 S.Ct. 662, 666, 7 L.Ed.2d 769 (1962).

Accordingly, it is

ORDERED and ADJUDGED that defendant's petition for release on bond pending appeal be and the same is hereby denied.

DONE and ORDERED in chambers at Miami, Florida, this 14th day of December, 1977.