UNITED STATES of America, Plaintiff,

v.

Roy L. WILLIAMS, Joseph Lombardo, Thomas F. O'Malley, and Andrew G. Massa, also known as Amos Massa, Defendants.

No. 81 CR 269.

United States District Court,
N.D. Illinois, E.D.

April 8, 1983.

Douglas P. Roller, Gary Shapiro, Mark Vogel, U.S. Dept. of Justice, Chicago, Ill., for plaintiff.

Thomas A. Wadden, Jr., William F. Krebs, Wadden, Scherr, Krebs & Gitner, Washington, D.C., for defendant Williams.

William Hundley, Lawrence Gondelman, Hundley & Cacheris, P.C., Washington, D.C., for defendant O'Malley.

Frank W. Oliver, Northfield, Ill., Judith Halprin, Halprin, Halprin & Cantor, Chicago, Ill., for defendant Lombardo.

George J. Cotsirilos, Robert M. Stephenson, Cotsirilos & Crowley, Ltd., Chicago, Ill., for defendant Massa.

MEMORANDUM ORDER

PRENTICE H. MARSHALL, District Judge.

On March 31, 1983, this court sentenced defendant, Roy L. Williams, for a period of observation and study concerning his physical health, pursuant to 18 U.S.C. § 4205(c) (1976). Because that subsection requires that commitment pursuant to it "shall be deemed to be for the maximum sentence of imprisonment prescribed by law," we imposed a sentence of 55 years in custody. We utilized § 4205(c) in response to Williams' allegation that because of acute emphysema, he is physically unable to withstand conventional incarceration. We noted that in our opinion his position regarding his physical incapacity to withstand incarceration was inconsistent with his discharge of the demanding duties required of him in

his position as president of the International Brotherhood of Teamsters. In these circumstances, we expressed the view that it was contrary to the best interests of the administration of justice for Williams' final sentence to be deferred until all appellate avenues were exhausted. Accordingly, we ordered him to report to the federal correctional facility at Springfield, Missouri on April 15, 1983 and we directed the Bureau of Prisons to return Williams to open court and produce with a report on June 28, 1983, at which time we would modify the sentence pursuant to § 4205(c). By reason of our utilization of observation of study under § 4205(c), we were unable to consider and rule upon the government's request that we impose a sentence of probation on at least one of the counts of this eleven count indictment with a special condition thereof that Williams resign his presidency of the International Brotherhood of Teamsters.

Williams has now moved, pursuant to rule 9 of the Federal Rules of Appellate Procedure and 18 U.S.C. §§ 3146 and 3148 (1976) for an order directing his release on bail (preferably his own recognizance) pending his appeal to the United States Court of Appeals for the Seventh Circuit and, if necessary, a petition for certiorari to the United States Supreme Court. Williams has already filed a timely notice of appeal.

■ At the threshold is the question whether Williams is entitled to the benefits of rule 9 and §§ 3146 and 3148 in light of the "temporary" sentence imposed under § 4205(c). Clearly he is. He is entitled to appeal from the entry of the conditional or temporary judgment and sentence. *Corey v. United States,* 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963). Section 3148 provides that "A person ... who has been convicted of an offense and ... has filed an appeal ... shall be treated in accordance with the provisions of § 3146 [the general bail statute] ..." In *United States v. Fort,* 409 F.2d 441 (D.C.Cir.1969), the court concluded that § 3148 was applicable to a sentence of observation and study imposed under the Federal Youth Corrections Act, 18 U.S.C. § 5010(e) (1976). For our purposes, the two observation and study statutes are virtually identical. Accordingly, we have concluded that Williams is entitled to seek bail pending appeal from the sentence we imposed under § 4205(c).

Under 18 U.S.C. § 3148, a person is entitled to release after conviction unless the court "has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained." Rule 9(c) of the Federal Rules of Appellate Procedure places "the burden of establishing that the defendant will not flee or pose a danger to any other person or to the community [on] ... the defendant."

Williams' appeal is neither frivolous nor taken solely for the purpose of delay. As he points out in his memorandum in support of his present motion, the appeal will involve substantial issues concerning, *inter alia,* the legality of electronic surveillance, admissibility of evidence, denial of motions for severance and mistrial, and the sufficiency of the evidence.

Nor does Williams present a significant risk of flight if he is admitted to bail. The office he holds with the International Brotherhood of Teamsters coupled with his poor health condition provide reasonable assurance that he will not flee the jurisdiction.

Thus, the question comes down to whether Williams has sustained the burden of establishing that he "will not ... pose a danger to any other person or to the community ..." Rule 9(c). We hold that he has not.

Williams argues that we have already recognized on at least two occasions that he does not present a danger to the community. We are told that this was true when we permitted him to remain at liberty following the return of the verdict and before we considered post-trial motions and again when we permitted him to remain at liberty

following sentencing until April 15. The first occasion was governed solely by §§ 3146 and 3148 under which the burden is upon the government to establish danger to the community. The government did not undertake to do so. Indeed, it acquiesced in Williams being permitted to remain at liberty on his pretrial bail pending consideration of the post-trial motions and sentencing. In the exercise of our discretion, that was the ruling.

Insofar as the second instance is concerned, we reject the notion that a stay of execution for 15 days in order that Williams can place his personal affairs in order is a manifestation of any conclusion that he does not pose a danger to the community.

■ Next Williams argues that the offense of which he stands convicted is a non-violent crime suggesting that it is only violent danger to the community of which we should be concerned under rule 9(c) and §§ 3146 and 3148. But the authorities which have considered the question do not agree. The fact that the community may suffer only a pecuniary harm if the defendant is released justifies denial of bail. *United States v. Provenzano,* 605 F.2d 85, 95–96 (3d Cir.1979) (labor corruption); *United States v. Karmann,* 471 F.Supp. 1021 (C.D.Cal.1979) (failure to file tax returns); *United States v. Miranda,* 442 F.Supp. 786, 792 (S.D.Fla.1977) (drug trafficking); *United States v. Parr,* 399 F.Supp. 883, 888 (W.D.Tex.1975) (misappropriation of public funds); *United States v. Louie,* 289 F.Supp. 850 (N.D.Cal.1968) (interstate transportation of forged securities).

In *Provenzano* the court observed,

The trial court found, on the basis of the Union's largess toward Provenzano during previous incarcerations and the continued control exercised by Provenzano's family, that if released Provenzano would have additional opportunity to exercise a substantial and corrupting influence within the Union. In the absence of any evidence produced by Provenzano that he would not continue to corruptly utilize his influence in the Union, *other than his personal assurances that at the age of 62*

*he would no longer participate in its affairs,* we conclude that he has not met his burden of demonstrating that he does not pose a danger to the community, or that conditions exist which if imposed would protect society against such danger.

605 F.2d at 96 (footnote omitted) (emphasis supplied).

Williams has not promised to leave his office nor has he been removed from it. Indeed, he asserts that any action to remove him from his office prior to the affirmance of his conviction would be unlawful.

■ Williams' conviction, and that of defendants Dorfman, Lombardo, O'Malley and Massa, are another in a long line of abuses of trust by high ranking officials in the International Brotherhood of Teamsters and trustees, agents and consultants of the Central States Southeast and Southwest Areas Pension and Health and Welfare Funds. Williams knew of those abuses and resultant prosecutions. He knew that Dorfman had been convicted of defrauding the Pension Fund and had been indicted in a second fraud. From his seemingly subordinate position as vice president of the International Brotherhood of Teamsters, Williams delegated and deferred to Dorfman in the instant situation permitting assets of the Pension Fund to be used for the purpose of attempting to bribe and corrupt a United States Senator. Furthermore, it appears that he tolerated and benefitted from the use of several hundreds of thousands of dollars of Pension Fund moneys to pay for the investigation, preparation and defense of this very action. The crime for which Mr. Williams was convicted is part of a larger, ongoing pattern in which union officials corrupted the operations of the Pension Fund, as much of the evidence the government sought to introduce at trial under Fed.R.Evid. 404(b) shows. *See also United States v. Dorfman,* 542 F.Supp. 345, 382–83 (N.D.Ill.1982) (scheme to kick back funds of pension plan by writing fraudulent bonds). In short, Williams and his predecessors and associates have treated the Fund as their own preserve. There is no

reason to believe that he will not continue to do so pending the appeal of his conviction unless he is incapacitated.

He suggests that the conditions of a consent decree entered in *Donovan v. Fitzsimmons,* 90 F.R.D. 583 (1981), safeguards against further abuse of his high office vis-a-vis the Pension and Health and Welfare Funds. But that decree imposes the same limitations that were in effect when Williams engaged in the conspiracy and scheme to defraud for which he stands convicted. Part I of the decree does no more than impose on the Union and the Pension Fund a duty to comply with the law, a duty they were under in 1979 and 1980. Part II appoints a fiduciary to control the funds' assets, having much the same relation to the fund as Equitable had in 1979 and 1980. Specifically, the decree acknowledges the Fund's trustees' duty to monitor the performance of the asset manager, a duty that the evidence shows Williams previously abused by corrupting defendant O'Malley. Part III establishes the duties of the asset manager, which track the duties of Equitable and Palmieri which Williams sought to circumvent. Part IV of the decree removes all convicted persons from any position with the Fund. Since Williams does not hold a position with the Fund it has no application to him. Nor would it preclude his further efforts to corrupt someone else who does hold a position with the Fund as he did in the case of defendant O'Malley.

The most pertinent innovation in the decree is Part V which appoints an independent special counsel to the Fund. The counsel is given broad powers to collect information, investigate the operation of the Fund, and report his findings to the court and the Department of Labor. But he is given no control over the Fund's assets. His role in no way limits the authority of the asset manager or the trustees.

Their authority remains intact. In short, he is a watchdog or ombudsman.

Williams has inflicted an injury on the community which he serves: the International Brotherhood of Teamsters and the Central States Southeast and Southwest Areas Pension and Health and Welfare Funds. He has not sustained his burden of persuading us that unless denied bail he will not continue to pose a danger to that community. Accordingly, defendant Williams' motion for a further stay of the execution of his sentence and for bail pending appeal is denied and he is ordered to report to the Federal Correctional Institution at Springfield, Missouri on April 15, 1983.[1]

---

1. On April 18, 1983, defendant Williams resigned as president of the International Brotherhood of Teamsters, effective April 20, 1983.

    I hereby unconditionally resign from all offices, elective and appointive, which I currently hold in the International Brotherhood of Teamsters, Chauffeurs, Warehousement, and Helpers of America and all affiliated labor organizations and as an officer and trustee of any employee benefit plan, effective at 5:00 p.m. on April 20, 1983.

    Accordingly, he no longer poses a threat to that community. On April 15, 1983, execution of his sentence was stayed pending appeal.